SCHLICHTER, BOGARD & DENTON
MARY L. PERRY (175911)
JERRY J. SCHLICHTER (054513)
DANIEL V. CONLISK *(Pro Hac Vice)*
HEATHER LEA *(Pro Hac Vice)*
100 South Fourth Street, Suite 900
St. Louis, MO  63102
Telephone:  (314) 621-6115
Facsimile:  (314) 621-7151
mperry@uselaws.com
jschlichter@uselaws.com

*Attorneys for Plaintiffs and Class Representatives*

FUTTERMAN & DUPREE LLP
JAMIE L. DUPREE (158105)
160 Sansome Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 399-3840
Facsimile:  (415) 399-3838
jdupree@dfdlaw.com

*Local Attorneys for Plaintiffs and Class Representatives*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BEVERLY KANAWI; ZOLTAN INCZE and SALVADOR AQUINO, as representatives of a class of similarly situated persons, and on behalf of the Plan,<br><br>*Plaintiffs,*<br><br>v.<br><br>BECHTEL CORPORATION, THE BECHTEL TRUST AND THRIFT PLAN ADMINISTRATIVE COMMITTEE, PAM DAMSGAARD, and PEGGI KNOX,<br><br>*Defendants.* | Case No. C 06-05566 CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STRIKE AND CROSS-MOTION TO AMEND AMENDED COMPLAINT TO CORRECT TYPOGRAPHICAL ERRORS**<br><br>Date:          March 2, 2007<br>Time:          10:00 a.m.<br>Courtroom:  8, 19th Floor<br><br>Hon. Charles R. Breyer |

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ............................................................1

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ...........................................................................................2

STANDARD OF REVIEW ..........................................................................................3

ARGUMENT................................................................................................................4

I.     Plaintiffs' Allegations Against Bechtel and Damsgaard State a Claim................4

   A.   Plaintiffs' Amendment Moots Defendants' Arguments Regarding Count I. ......4

   B.   The Summary Plan Description Shows That Bechtel Is A Plan Fiduciary..........4

   C.   Plaintiffs' Allegations Of Fiduciary Status Meet Federal Notice Pleading Standards. .......7

II.    Count II Properly Seeks Long-Established Forms of Equitable Relief Against Plan
       Fiduciaries......................................................................................................8

   A.   Bechtel Does Not Seek Outright Dismissal of Count II. ....................................8

   B.   An Accounting Is An Equitable Remedy Particularly Appropriate For This Case. ............9

   C.   Remedies Plaintiffs' Seek Under Count II Are Proper Under §502(a)(3). ......11

   D.   Defendants' Motion to Dismiss Count II Based Upon Relief Requested in The Prayer
       Lacks *Any* Legal Support. ...........................................................................12

III.   Plaintiffs' Request for a Jury Trial is Proper Under ERISA § 502(a)(2)............13

     1.   Congress Authorized Legal Relief Under § 502(a)(2), Thereby Entitling Parties
       To A Jury Trial. ...........................................................................................14

     2.   Regardless of Congressional Intent, The Seventh Amendment Guarantees A Jury
       Trial For Claims Seeking Legal Relief Under ERISA § 502(a)(2)..............17

     3.   Plaintiffs Are Entitled To A Jury Trial Because Their §502(a)(2)Claim Seeks
       Legal Relief...................................................................................................19

     4.   Defendants Ignore *Great-West,* Wholly Fail to Consider The Nature of Relief
       Sought, and Undertake No Analysis of Plaintiffs' Jury Demand. ...............20

IV.    Reliance on ERISA's Statute of Limitations is An Affirmative Defense That
       Plaintiffs Need Not Address In The Complaint..............................................22

1

# TABLE OF AUTHORITIES

Page

2 **Cases**

3  *Abate v. Alta Health & Life Ins. Co.,*
   458 F. 3d 955 (9th Cir. 2006) ..................................................................................9
4
   *Abbarno v. Carborundum Co.,*
5   682 F. Supp. 179 (W.D.N.Y. 1988).........................................................................17

6  *Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan Inc.,*
    227 F.Supp. 2d 880 (N.D. Ill. 2003)........................................................................13
7
   *Algie v. RCA Global Communications, Inc.,*
8   891 F. Supp. 870 (S.D.N.Y. 1994) ..........................................................................17

9  *Barker v. American Mobil Power Corp.,*
    64 F.3d 1397 (9th Cir. 1995)....................................................................................23
10
   *Batchelor v. Oak Hill Medical Group,*
11   870 F 2d 1446 (9th Cir. 1989).....................................................................................7

12 *Beacon Theatres, Inc. v. Westover,*
    359 U.S. 500 (1959) ................................................................................................20
13
   *Bertrand v. Orkin Exterminating Co.,*
14   419 F. Supp. 1123 (N.D. Ill. 1976)..........................................................................19

15 *Blau v. Del Monte Corp.,*
    748 F.2d 1348 (9th Cir. 1984) ................................................................................22
16
   *Bona v. Barasch,*
17   No. 01 Civ. 2289 WL 1395932, at *33-35 (S.D. N.Y. Mar. 20, 2003).............17, 18, 20

18 *Bostic v. Goodnight,*
    443 F.3d 1044 (8th Cir. 2006) ..................................................................................9
19
   *Bowen v. Massachusetts,*
20   478 U.S. 879 (1988) ................................................................................................14

21 *Bowman v. Alaska Airlines, Inc.,*
    14 F.R.D. 70 (D. Ct. Territory of Alaska, 1952) ....................................................13
22
   *Calhoun v. Trans World Airlines, Inc.,*
23   400 F.3d 593 (8th Cir. 2005)....................................................................................19

24 *Cedar Rapids Pediatric Clinic Employees Pension Plan v. Continental Assur. Co.,*
    No. 86-5192, 1988 WL 216169 (W.D. Ark. July 25, 1988)......................................17
25
   *Chauffeurs, Teamsters & Helpers v. Terry,*
26   494 U.S. 558 (1990) ........................................................................................17, 18, 19

27 *City of Monterey v. Del Monte Dunes,*
    526 U.S. 687 (1999) ................................................................................................19
28

ii

*Civic Western Corp. v. Zila Industries, Inc.,*
  66 Cal. App. 3d 1 (1977) ............................................................................9, 10

*Clark v. City of Braidwood,*
  318 F.3d 764 (7th Cir. 2003) ...........................................................................23

*Coan v. Kaufman,*
  457 F.3d 250 (2d Cir. 2006) ............................................................................15

*Corpus Christi Bank & Trust v. Roberts,*
  587 S.W. 2d 173 (Tex. Ct. App. 1979)............................................................10

*Cruz v. U.S.,*
  219 F.Supp. 2d 1027 (N.D. Cal. 2002)............................................................10

*Curtis v. Loether,*
  415 U.S. 189 (1974) ........................................................................................11

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962) ........................................................................................20

*Donovan v. Robbins,*
  579 F. Supp. 817 (N.D. Ill. 1984)...............................................................15, 17

*Duncan v. Walker,*
  533 U.S. 167 (2001) ........................................................................................16

*Empress LLC v. City and County of San Francisco,*
  419 F.3d 1052 (9th Cir. 2005) ...........................................................................3

*Engelsmann v. Holekamp,*
  402 S.W.2d 382 (Mo. 1966).............................................................................10

*Eslava v. Gulf Telephone Co.,*
  418 F. Supp. 2d 1314 (S.D. Ala. 2006) ..............................................................7

*Feltner v. Columbia Pictures Television, Inc.,*
  523 U.S. 340 (1998). ..................................................................................14, 19

*Foltz v. U.S. News and World Report,*
  663 F. Supp. 1494 (D.D.C. 1987)....................................................................24

*Frizzell v. Southwest Motor Freight,*
  154 F.3d 641 (6th Cir. 1998) .......................................................................15, 17

*Gangitano v. NN Investors Life Ins. Co.,*
  733 F. Supp. 342 (S.D. Fla. 1990)...................................................................17

*Gilliam v. Edwards,*
  492 F. Supp. 1255 (D.N.J. 1980)......................................................................15

*Gomez v. Toledo,*
  446 U.S. 635 (1980) ........................................................................................23

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989) ...................................................................................................7, 17

*Great-West Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) .................................................................................................passim

*Guardian Music Corp. v. James W. Guerico Enterprises, Inc.,*
    2006 WL 1880381 at *2 (S.D.N.Y. 2006)...............................................................9

*Harris Trust & Sav. Bank v. Salomon Smith Barney,*
    530 U.S. 238 (2000) .................................................................................................3

*Homeyer v. Stanley Tulchin Associates, Inc.,*
    91 F.3d 959 (7th Cir. 1996)......................................................................................8

*In re Cardinal Health, Inc. ERISA Litigation,*
    424 F. Supp. 2d 1002 (S.D. Ohio 2006).................................................................7

*In re CMS Energy ERISA Litig.,*
    312 F. Supp. 2d 898 (E.D. Mich. 2004) ................................................................7

*In re Elec. Data Sys. Corp. "ERISA" Litig.,*
    305 F. Supp. 2d 658 (E.D. Tex. 2004)....................................................................7

*In re Goodyear Tire & Rubber Co. ERISA Litigation,*
    438 F. Supp. 2d 783 (N.D. Ohio 2006) ..................................................................15

*In re H. King & Associates,*
    295 B.R. 246 (Bkrtcy. N.D. Ill 2003) .....................................................................7

*In re Polaroid ERISA Litig.,*
    362 F.Supp. 2d 461 (S.D.N.Y. 2005). ....................................................................4

*In re Sprint Corp. ERISA Litig.,*
    388 F. Supp. 2d 1207 (D. Kan. 2004).....................................................................7

*In re Xcel Energy, Inc.,*
    312 F. Supp. 2d 1165 (D. Minn. 2004)...................................................................7

*Ingram v. Martin Marietta Long Term Disability Income Plan,*
    244 F.3d 1109 (9th Cir. 2001) .................................................................................21

*Jackson v. Truck Driver's Union,*
    933 F. Supp. 1124 (D. Mass. 1996)........................................................................15

*Keach v. United States Trust Co., N.A.,*
    256 F.Supp. 828 (C.D. Ill. 2003) ............................................................................7

*Keeble v. Brown,*
    135 Cal App. 2d 126 (1954) ..............................................................................9, 10

*Kerasotes v. Estate of Kerasotes,*
    605 N.E.2d 643  (Ill. Ct. App. 1992).......................................................................7

*Lamberty v. Premier Millwork & Lumber Co.,*
    329 F. Supp. 2d 737 (E.D. Va. 2004) ....................................................17

*Landmark Equity Corp. v. Runnells,*
    83 B.R. 362 (E.D. Va. 1987) .................................................................13

*Larson v. Northrop Corp.,*
    21 F.3d 1164 (D.C.Cir. 1994)................................................................23

*Leigh v. Engle,*
    727 F.2d 113 (7th Cir. 1984) ..................................................................6

*Lorillard v. Pons,*
    434 U.S. 575 (1978) ......................................................................14, 17

*Mankert v. Elmatco Products, Inc.,*
    854 A.2d 766 (Conn. Ct. App. 2004) .....................................................10

*Mann v. Kemper Financial Companies,*
    247 N.E.2d, 317 (Ill. Ct. App. 1993) .......................................................7

*McClung v. Smith,*
    870 F.Supp. 1384 (E.D.Va. 1994) ...........................................................7

*McDonald v. Artcraft Elec. Supply Co.,*
    774 F. Supp. 29 (D.D.C. 1991)........................................................17, 18

*Mertens v. Hewitt Associates,*
    508 U.S. 248 (1993) ......................................................................14, 19

*Mullins v. Pfizer, Inc.,*
    899 F. Supp. 69 (D. Conn. 1995)............................................................17

*Mut. Life Ins. Co. v. Yampol,*
    840 F.2d 421 (7th Cir. 1988) ..................................................................4

*Nevill v. Shell Oil Co.,*
    835 F.2d 209 (9th Cir 1987) ..................................................................21

*NSC Intern. Corp. v. Ryan,*
    531 F. Supp. 362 (N.D. Ill. 1981) ..........................................................18

*Pereira v. Farace,*
    413 F.3d 330 (2d Cir. 2005) ..................................................................18

*Rankin v. Rots,*
    278 F. Supp. 2d 853 (E.D. Mich. 2003) ...................................................7

*Rhodes v. Piggly Wiggly Ala. Distributing Co.,*
    741 F. Supp. 1542 (N.D. Ala. 1990)........................................................17

*Rivoli Drug Co. v. Lynch,*
    50 F.2d 536 (9th Cir. 1931) ....................................................................9

*Ross v. Bernhard,*
   396 U.S. 531 (1970) ........................................................................................................20

*Sadler v. Jorad, Inc.,*
   680 N.W. 2d 165 (Neb. 2004) .........................................................................................11

*Spinelli v. Gaughan,*
   12 F.3d 853 (9th Cir. 1993) .......................................................................................18, 22

*Stamps v. Michigan Teamsters Joint Council,*
   431 F. Supp. 745 (E.D. Mich. 1977) .........................................................................15, 17

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) ..........................................................................................................3

*Thomas v. Oregon Fruit Products,*
   228 F.3d 991 (9th Cir. 2000) ...........................................................................................21

*Towers v. Titus,*
   5 B.R. 786 (N.D. Cal. 1979) ....................................................................................9, 10, 11

*Tull v. United States,*
   481 U.S. 412 (1987) ........................................................................................................17

*United States v. N. Trust Co.,*
   372 F.3d 886 (7th Cir. 2004) ...........................................................................................23

*Utilicorp United Inc. v. Kemper Financial Serv., Inc.*
   741 F. Supp. 1363 (W.D. Mo. 1989) ..........................................................................17, 18

*Vicinanzo v. Brunschwig & Fils, Inc.,*
   739 F. Supp. 882 (S.D.N.Y. 1990) ...................................................................................18

*Volk v. D.A. Davidson & Co.,*
   816 F.2d 1406 (9th Cir. 1987) .........................................................................................24

*Xechem, Inc. v. Bristol-Myers Squibb Co.,*
   372 F.3d 899 (7th Cir. 2004) ...........................................................................................23

*Yamaguchi v. U.S. Dept. of the Air Force,*
   109 F.3d 1475 (9th Cir. 1997) ...........................................................................................3

**Statutes and Regulations**

29 C.F.R. § 2509.75-8 .........................................................................................................7

29 U.S.C. § 1002(2)(A) ........................................................................................................2

29 U.S.C. § 1002(21)(A) ...................................................................................................2, 6

29 U.S.C. § 1109 ....................................................................................................3, 7, 16, 19

29 U.S.C. § 1132 (a)(2) ................................................................................................3, 16

29 U.S.C. § 1132(a)(3) ................................................................................3, 11, 16

ERISA § 409 ...............................................................................................16, 19, 21

ERISA § 502(a)(2)...............................................................................................passim

ERISA § 502(a)(3)...............................................................................................passim

Fed R. Civ. P. 8(a)(2)....................................................................................................3

Fed. R. Civ. P. 8(f)........................................................................................................3

Fed. R. Civ. P. 9(b)......................................................................................................23

Fed. R. Civ. P. 54(c) ...................................................................................................13

**Other Authorities**

*Bogert on Trusts and Trustees,* § 962 ........................................................................10

Restatement *(Second) of Trusts,* § 172 & Cmts. a-c (1959) .........................................10

*Scott, The Law of Trusts,* § 172 at p. 1399-1400 (3d Ed. 1967).................................10

3 Witkin, *California Procedure* (2nd Ed. 1971) Pleading, § 674, pp. 2300-2301 ........................10

3 Witkin, *Summary of Cal. Law: Agency and Employment* (10th Ed. 2005) § 97 ........................6

**STATEMENT OF ISSUES TO BE DECIDED**

One:  Have Plaintiffs alleged facts sufficient to state a claim for breach of fiduciary duty under ERISA against Defendant Bechtel Corporation ("Bechtel") when the existence of a fiduciary duty involves factual examination and, where, among other things, Bechtel accepted delegation of the day-to-day responsibility for the operation of the Plan, Bechtel selects the members of the Committee overseeing the Plan and indemnifies them, the Bechtel Board of Directors controls its operation via the Committee charter, Bechtel has entered a trust agreement with the Trustee controlling the manner in which the Committee may invest the Trust Fund, the Plan provides that other employers may join subject to designating Bechtel their agent with respect to relations with the Trustee and the Committee, amending, terminating or administering the Plan, and investing the Trust Fund, and the Plan Documentation itself identifies Bechtel as a "FIDUCIAR[Y] NOT INSURER[ ]"of any payment from the Trust Fund?

Answer:  Yes.

Two:  Have Plaintiffs alleged facts sufficient to state a claim for breach of fiduciary duty under ERISA against Defendant Pat Damsgaard who signed certain Plan documents when the existence of a fiduciary duty involves factual examination?

Answer:  Yes.

Three:  Shall Plaintiffs' motion to amend the Amended Cross-Complaint to correct typographical errors made in the first Count be granted for good cause and because defendants have suffered no prejudice?

Answer:  Yes

Four:  Does Plaintiffs' second Count state a claim upon which relief may be granted where in the prayer for relief, Plaintiff's seek a variety of remedies available under ERISA §§ 502(a)(2) and (3)?

Answer:  Yes.

Five:  Have Plaintiffs properly requested a jury trial in light of *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the language of ERISA, the Seventh Amendment, and their request for legal relief under Section 502(a)(2) of ERISA?

Answer:  Yes.

Six:  Have Defendants presented a legitimate basis to strike Plaintiffs' allegations of fraudulent concealment, when such allegations relate only to a possible affirmative defense by Defendants for which no pleading is required, and Plaintiffs have alleged, *inter alia* that Defendants failed to disclose a litany of information about Plan fees and expenses to the detriment of Plan participants, and where Defendants affirmatively misrepresented that the Plan saved multi-million dollars in a year when in fact such expenses had increased by more than two million dollars?

Answer:  No.

**INTRODUCTION**

Plaintiffs' Complaint easily surpasses federal notice pleading standards requiring a short plain statement apprising the Defendants of the claims against them.  Ignoring the applicable

1

1    standard against which complaints are judged, Defendants mischaracterize Plaintiffs' claims,

2    focus upon certain paragraphs of the Complaint while disregarding others, and advance rash

3    misstatements of law in support of their Motion to Dismiss.  The Court should deny Defendants'

4    Motion.

5                                    **STATEMENT OF FACTS**

6        Plaintiffs are participants in The Bechtel Trust and Thrift Plan ("Plan"), a 401(k) plan.

7    The Employee Retirement Income Security Act (ERISA) governs private welfare and pension

8    plans, including 401(k) plans.  *See* 29 U.S.C. § 1002(2)(A).  Under ERISA, one is a plan

9    fiduciary "to the extent . . . [the person] exercises any discretionary authority or discretionary

10   control respecting management of such plan," "has any discretionary authority or discretionary

11   responsibility in the administration of such plan," or enjoys other identified discretionary powers

12   with respect to plan administration.  *See* 29 U.S.C. § 1002(21)(A).

13       Plaintiffs allege that Bechtel, The Bechtel Trust & Thrift Plan Committee, Peggi Knox

14   (Vice President of Retirement Plans) and Pat Damsgaard (officer and employee of Bechtel)

15   possessed and exercised such discretionary authority and hence are fiduciaries of the Plan.  (First

16   Am. Compl. ("FAC") ¶¶ 7, 10, 18-21, 62-64.)  The Complaint explains that Defendants, as

17   fiduciaries of the Plan, caused or allowed the Plan to pay unreasonable and excessive fees and

18   expenses for Plan administration.  The Complaint details how the Defendants failed "to monitor,

19   discover, and prevent or recover . . . undisclosed Revenue Sharing arrangements" through which

20   hidden fees flow.  (FAC ¶ 105.)  These unreasonable and excessive fees were assessed against

21   participants' 401(k) accounts on a Plan-wide basis *before* investment returns were reported.

22   They impaired the participants' retirement savings, but, because the actual use and distribution of

23   these fees are undisclosed and hidden, Plan participants had no indication that they were being

24   swindled.

25       The Complaint explains that, in violation of their fiduciary duties, Defendants failed to

26   disclose fully and accurately these Plan-wide excessive administrative fees; failed to explain that

27   these excessive administrative fees were hidden within the charges (the "expense ratios") of the

28   Plans' various investment options; and failed to disclose to participants the true and necessary

2

1    cost of administering the Plan. (FAC ¶ 97.) The First Amended Complaint details how

2    Defendants manipulated the accounting for, and reporting of, Plan administrative expenses so as

3    to suggest that capable administration had reduced such expenses by $5.9 million, when they

4    actually had increased by more than $2 million. (FAC ¶¶ 65-80.)

5         As a result of Defendants' nondisclosures and fraudulent concealment, participants lacked

6    the information necessary to understand and protect their interests in the Plan. By denying

7    participants such information, Defendants deprived participants of the means to insist, on a Plan-

8    wide basis, that Defendants comply with ERISA and bring Plan administrative expenses into

9    line. Defendants' non-disclosures and concealment also disabled participants, on a Plan-wide

10   basis, from making informed decisions regarding their participation and investments in the Plan.

11        In Count I, Plaintiffs seek a number of remedies under ERISA § 502(a)(2), which permits

12   an action against Plan fiduciaries "by a participant, beneficiary or fiduciary for appropriate relief"

13   for breaches of fiduciary duties. *See* 29 U.S.C. §§ 1109, 1132 (a)(2). In Count II, Plaintiffs seek

14   equitable relief under ERISA § 502(a)(3), which also allows an action "by a participant [or]

15   beneficiary," but is not limited to suits against fiduciaries. *See* 29 U.S.C. § 1132(a)(3); *Harris*

16   *Trust & Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238, 246 (2000).

17                          **STANDARD OF REVIEW**

18        Federal pleading standards require that a complaint contain a short and plain statement

19   that provides the defendant with fair notice of the claim. *See* Fed R. Civ. P. 8(a)(2); *Empress*

20   *LLC v. City and County of San Francisco*, 419 F.3d 1052, 1055-56 (9th Cir. 2005). Every

21   element of the legal theory is not necessary. *Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d

22   1475, 1481 (9th Cir. 1997). Dismissal is appropriate only if the defendant demonstrates that

23   there exists *no* possible set of facts consistent with the allegations in the complaint under which

24   the plaintiff could recover. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see* Fed. R.

25   Civ. P. 8(f) (pleadings should be construed "as to do substantial justice"). The Defendants have

26   not even attempted to argue that Plaintiffs fail to meet this standard.

27        Thus, to defeat a motion to dismiss, a complaint only need contain very few allegations

28   regarding a defendant's fiduciary status, particularly considering the broad and functional

1    definition of fiduciary under ERISA. *See Mut. Life Ins. Co. v. Yampol*, 840 F.2d 421, 425 (7th

2    Cir. 1988); *In re Polaroid ERISA Litig.*, 362 F.Supp. 2d 461, 470 (S.D.N.Y. 2005).

3                                     **ARGUMENT**

4    **I.        Plaintiffs' Allegations Against Bechtel and Damsgaard State a Claim.**

5            **A.       Plaintiffs' Amendment Moots Defendants' Arguments Regarding Count I.**

6            As Defendants observe in their Memorandum of Points and Authorities ("Defendants'

7    Memo."), the Complaint generally attributes the conduct alleged to "Defendants." See

8    Defendants' Memo., p. 7, n. 4. In pre-filing versions, Plaintiffs had collectively defined and

9    referred to all four Defendants as "Bechtel," but doing so made some portions of the Complaint

10   difficult to follow. Accordingly, Plaintiffs changed – or intended to – all such collective

11   references from "Bechtel" to "Defendants." Unfortunately, the collective references, intended to

12   refer to all four defendants in Count I, were not changed.

13           Plaintiffs now seek leave to amend, for purposes of correcting this typographical error, by

14   changing "Bechtel" to "Defendants" in Count I, paragraphs 118, 119, 121 and 122. Bechtel does

15   not dispute that the Bechtel Trust and Thrift Plan Committee (the "Committee") is a Plan

16   fiduciary. As such, the Committee is answerable to Plaintiffs' breach of fiduciary duty cause of

17   action in Count I and the Count should not be dismissed.[1]

18           **B.       The Summary Plan Description Shows That Bechtel Is A Plan Fiduciary.**

19           Defendants contend that only the Committee, and not Bechtel, is a Plan fiduciary. They

20   argue that the Plan documents confer upon the Committee all discretionary authority and

21   responsibility over the administration of the Plan, and all control over the management and

22   disposition of Plan assets. Defendants Memo., pp. 5-6. They assert that the Committee has not

23   delegated any responsibility whatsoever to Bechtel, or at least that Plaintiffs have not so alleged.

24   *Id.* at 8.

25           But the Summary Plan Description (the "SPD"), which Defendants submit as Exhibit B to

26   the Declaration of Peggi S. Knox (the "Knox Declaration"), expressly states:

27

28   _____
     [1] If the Court prefers, Plaintiffs can file separate motion to amend the Complaint.

> The Plan Administrator **has delegated day-to-day responsibility for the operation of the Plan to Bechtel's** Human Resources Department and Bechtel's Plan administration and services group.

Knox Declaration, Ex. B, p. 17 (emphasis added). Certainly this, and reasonable inferences drawn from it in Plaintiffs' favor, are sufficient to withstand Defendants' contradictory argument that Bechtel has absolutely no such responsibility in connection with the Plan.

The Plan Document, which Bechtel submits as Exhibit A to the Knox Declaration, also suggests that Bechtel is a Plan fiduciary. First, pursuant to § 6.01, Bechtel chooses Committee members and Bechtel's Board of Directors controls its operation via the Committee's charter. Knox Declaration, Ex. A, p. 18. Second, in § 6.05, Bechtel undertakes to indemnify Committee members for any liability that might arise in connection with their exercise of Committee duties. Accordingly, not only does Bechtel choose Committee members, but it also accepts ultimate financial responsibility for their performance of Committee responsibilities.

Third, Bechtel retains substantial control over the Committees' Plan investment activities and details. Section 6.14 of the Plan states:

> Investments under the Plan shall consist of three or more separate investment funds, as the Committee shall designate from time to time. The number and type of such funds, **the circumstances in which a Participant may direct investment** to or among such funds **and other details pertaining to the investment of the Trust Fund shall be determined by the Committee in accordance with applicable provisions of the trust agreement between Bechtel Corporation and the Trustee** and any rules and regulations that may be imposed on the plan by the investment vehicles through which the investment funds offered by the Plan are administered. . . .

Knox Declaration, Ex. A, p. 21. Thus, Bechtel, through the terms of the trust agreement that it negotiates with the Plan trustee, controls the manner in which the Committee may exercise its authority, responsibility, and control over Plan assets and in administration under the Plan document. Bechtel has changed Trustees, and thus presumably trust agreements, twice. *See* FAC, ¶¶ 34, 37; Knox Declaration, Ex. A, §1.24, p. 4. Bechtel reserves the right to amend the trust agreement from time to time. *Id.*

Fourth, in § 6.08, the Plan states that other employers may adopt the Plan with Bechtel's consent. If an employer does so, however, § 6.08 requires, among other things, that the employer must "irrevocably designate Bechtel Corporation or its designee as its agent to the maximum

1   extent permitted by law": (1) "[w]ith respect to its relations with the Trustee and Administrator

2   [the Committee];" (2) for purposes of "amending, terminating or administering the Plan;" and (3)

3   for purposes of "investing the Trust Fund." Knox Declaration, Ex. A, p. 21. These provisions,

4   and reasonable inferences drawn from them in Plaintiffs' favor, suggest that Bechtel sought to

5   make clear in the Plan document that – even if other employers participate in the Plan – Bechtel

6   shall retain the same fiduciary authority and control over the Committee, the Trustee, the Plan, its

7   administration, and the investment of the Trust Fund as it has over the Plan in respect of its

8   participation.

9       Indeed, as Bechtel contends, it wholly lacked meaningful discretion and authority in

10  connection with the Plan, why would Bechtel require any irrevocable agency to deal with the

11  Committee, administer the Plan, and invest the Trust Fund?  Moreover, an agent is a fiduciary to

12  its principal regarding the subject of the agency. 3 Witkin, *Summary of Cal. Law:  Agency and*

13  *Employment* (10th Ed. 2005) § 97.  If Bechtel is not a Plan fiduciary in respect of its own

14  participation and employees in the Plan, it makes no sense that Bechtel would require that other

15  employers make Bechtel a fiduciary for other employers and their employees' participation in the

16  Plan.

17      Finally, the Plan itself characterizes Bechtel as a Plan Fiduciary.  In § 6.08, the Plan

18  states:

19      ***FIDUCIARIES* NOT INSURERS.  *The Employers [Bechtel[2]]*,** the Committee,
        and the Trustee do not guarantee the Trust Fund from loss or depreciation.  The
20      Employers do not guarantee the payment of any money, which may be or becomes
        due to any person, from the Trust Fund.
21

22  Knox Declaration, Ex. A, p. 17.  In light of various provisions of the Plan, including those

23  discussed above, Plaintiffs respectfully submit that Betchel's own characterization that it is a

24  fiduciary is accurate and intentional.  Accordingly, under the allegations in the Complaint and

25  specific representations in the Plan documents, Bechtel is a fiduciary. *See* 29 U.S.C. §

26  1002(21)(A) (defining fiduciary); *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984); *Keach v.*

27

28  [2] Section 1.13 of the Plan defines "Employer" as "Bechtel Corporation" or any other employer which adopts the Plan.

1  *United States Trust Co., N.A.,* 256 F.Supp. 828, 831 (C.D. Ill. 2003) (ERISA directs courts to

2  look at parties' real authority to determine fiduciary authority and status). Its motion to dismiss

3  must be denied.

4  **C.    Plaintiffs' Allegations Of Fiduciary Status Meet Federal Notice Pleading**
       **Standards.**

5

6  Numerous courts have held that the fact-intensive analysis required to determine whether

7  one is a fiduciary makes it inappropriate for resolution in a motion to dismiss, when the plaintiff

8  has not conducted discovery.[3] "[T]he manner in which each defendant…operated" remains

9  "something of a black box" prior to discovery. *Rankin v. Rots,* 278 F. Supp. 2d 853, 879 (E.D.

10  Mich. 2003). "To expect a plaintiff to be able to turn on the light and point to the particular

11  individuals who exercised decision making authority is simply too much to require at" the

12  dismissal stage. *Id.*

13  Against this background, Defendants contend that the Complaint's allegations are

14  insufficient to support a claim that either Bechtel or Ms. Damsgaard acted as an ERISA fiduciary.

15  (Defs' Mem. Supp. Mot. Dismiss pp. 4-8.) They are simply wrong. The Complaint explains that

16  Bechtel is the Plan Sponsor. As set forth above, as Plan Sponsor, it is responsible for appointing

17  and monitoring the Plan Administrator or Named Fiduciary. Plan Doc ¶ 6.01. It has retained for

18  itself the overriding authority and control discussed above. It is, at a minimum, a fiduciary by

19  law for at least this exercise of discretion over the management of the Plan. *See* 29 C.F.R. §

20  2509.75-8; *Batchelor v. Oak Hill Medical Group,* 870 F 2d 1446, 1448-49 (9th Cir. 1989).

21

22  [3] *In re Cardinal Health, Inc. ERISA Litigation,* 424 F. Supp. 2d 1002, 1030 (S.D. Ohio 2006) ("Fiduciary status is a
'fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.'"); *Eslava v. Gulf*

23  *Telephone Co.,* 418 F. Supp. 2d 1314, 1322-23 (S.D. Ala. 2006) (declining to dismiss plaintiffs' ERISA claims
based on defendant's "alleged fiduciary status or the parameters of her fiduciary capacities at this stage of the case");
*In re Sprint Corp. ERISA Litig.,* 388 F. Supp. 2d 1207, 1227-28 (D. Kan. 2004) (same); *In re Xcel Energy, Inc.,* 312

24  F. Supp. 2d 1165, 1180-81 (D. Minn. 2004) (same); *In re CMS Energy ERISA Litig.,* 312 F. Supp. 2d 898, 907-09
(E.D. Mich. 2004) (same); *In re Elec. Data Sys. Corp. "ERISA" Litig.,* 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004)

25  (same). [4] *In re H. King & Associates,* 295 B.R. 246, 271-37 (Bkrtcy. N.D. Ill 2003); *see also Granfinanciera, S.A. v.
Nordberg,* 492 U.S. 33, 49 n.7 (1989) (describing an accounting as a "specifically equitable form of relief"); *Corpus
Juris Secundum,* Accounting, § 6 ("An accounting is essentially an equitable remedy, which arises from an

26  obligation to account for the plaintiff's money or property."). [5] *In re H. King & Associates, supra,* 295 B.R. at 272-
73 ("A plaintiff may maintain an action for an accounting even though he has an adequate remedy at law if the

27  accounting sought is based on breach of a fiduciary duty."); *McClung v. Smith,* 870 F.Supp. 1384, 1400 (E.D.Va.
1994); *Mann v. Kemper Financial Companies,* 247 N.E.2d 317, 327 (Ill. Ct. App. 1993) (An accounting is an

28  equitable remedy that, in the context of breach of fiduciary duty claims, may be pursued *without* a showing that legal
remedies are inadequate.); *Kerasotes v. Estate of Kerasotes,* 605 N.E.2d 643, 651 (Ill. Ct. App. 1992).

1   Ms. Damsgaard signed the forms filed with the federal government on behalf of the Plan

2   Administrator. Thus, it is reasonable to conclude that she is either a member of the committee or

3   acts as its agent. Bechtel has not established otherwise; thus, she has the requisite discretionary

4   authority. The Complaint also alleges, among other things, that "Defendants," which would

5   include Bechtel and Ms. Damsgaard, caused the Plan to undertake the conduct set forth above –

6   all of which would involve the exercise of discretionary authority. (FAC ¶¶ 26.B(i) & (ii), 58-60,

7   90, 92-93, 96, 133.)

8   The Complaint alleges that Bechtel manipulated the accounting and reporting of

9   administrative expenses so as to suggest a $5.9 million savings in 2004, when such expenses

10  actually increased by more $2 million during that year. (FAC ¶¶ 75-78.) The Court must accept

11  these allegations as true, and they more than satisfy federal pleading requirements. *Homeyer v.*

12  *Stanley Tulchin Associates, Inc.*, 91 F.3d 959, 960 (7th Cir. 1996). Seeking to escape this,

13  Bechtel urges that accounting and reporting do not involve discretionary authority. But, even if

14  this is true, it wholly misses the point: the decision to manipulate accounting and reporting to

15  obscure the actual level of administrative expenses, as well as the decision to make misleading

16  statements about *savings* in a year when such expenses *increased*, is not the mere completion of a

17  ministerial task. It is an exercise of discretion and a breach of fiduciary duty.

18  **II.    Count II Properly Seeks Long-Established Forms of Equitable Relief Against**
        **Plan Fiduciaries.**
19

        **A.    Bechtel Does Not Seek Outright Dismissal of Count II.**
20

21  Defendants do not seek dismissal of Count II against the Committee. They challenge

22  Count II only against Bechtel and Ms. Damsgaard. Their argument depends primarily on the

23  success of their assertions that Bechtel and Ms. Damsgaard are not Plan fiduciaries. But

24  § 502(a)(3) provides for the assertion of claims against *non fiduciaries*. Even if fiduciary status

25  were relevant § 502(a)(3), Plaintiffs Bechtel and Damsgaard are Plan fiduciaries, as discussed

26  above.

27

28

**B.    An Accounting Is An Equitable Remedy Particularly Appropriate For This Case.**

In challenging Plaintiffs' request for an accounting, Defendants ignore both long-established law and the facts underlying Count II.  As a matter of law[4], there is no serious dispute that "[a]n accounting is an equitable remedy designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due." *Bostic v. Goodnight*, 443 F.3d 1044, 1048 (8th Cir. 2006); *Guardian Music Corp. v. James W. Guerico Enterprises, Inc.*, 2006 WL 1880381 at *2 (S.D.N.Y. 2006); *see Rivoli Drug Co. v. Lynch*, 50 F.2d 536, 537-38 (9th Cir. 1931); *Towers v. Titus*, 5 B.R. 786, 793-94 (N.D. Cal. 1979); *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, 14 (1977).

In this case, an accounting would be a particularly appropriate remedy for at least two reasons.  First, Plaintiffs request an accounting to remedy breaches of fiduciary duties owed to them by Plan fiduciaries.  Accountings are traditional equitable remedies that courts routinely order in fiduciary contexts and in connection with claims for breach of fiduciary duty. *Keeble v. Brown*, 135 Cal App. 2d 126, 133 (1954) ("Where there is a fiduciary relationship . . and the facts are peculiarly within the knowledge of one of the parties . . . an accounting lies."); *Rivoli Drug Co., supra*, 50 F.2d at 537-38 ("The existence of any confidential or fiduciary relation is sufficient to invoke" equitable jurisdiction to order an accounting.); *see Towers*, *supra*, 5 B.R. at 793.[5]  ERISA, derives its governing fiduciary principles from the common law of trusts. *Abate v. Alta Health & Life Ins. Co.*, 458 F. 3d 955, 965 (9th Cir. 2006).  Courts regularly depend on trust law in interpreting ERISA. *Id.*  In trust law, an accounting is the primary equitable remedy for beneficiaries alleging a breach of fiduciary duty in circumstances like those here, *exactly because*, as Plan participants here, trust beneficiaries (or settlors for them) have placed assets in the control of the trustee/Plan administrator.  Consequently, courts for centuries have exercised equitable powers to require that trustees bear the responsibility of explaining and documenting both: (1) every accretion, expenditure, application, and distribution of such assets; and (2) that

1    every such accretion, expenditure, application, and distribution was proper.[6]

2        Second, Plaintiffs' claims arise out of a complicated web of Plan asset transfers among

3    entities involved in the operation of the Plan. Plaintiffs' allege that, through the combination of

4    "Hard Dollar" payments for Plan administrative services and hidden "Revenue Sharing" transfers

5    among service providers, the Defendants caused or allowed the Plan to pay excessive

6    administrative fees. (FAC ¶¶ 58-93.) Litigating and resolving these claims necessarily will

7    involve identifying and reconciling multiple transfers, payments, and flows of Plan assets.

8    Courts consider an equitable accounting well-equipped for such circumstances. "An accounting

9    cause of action is equitable in nature, and may be sought 'where . . . the accounts are so

10   complicated that an ordinary legal action demanding a fixed sum is impracticable.'" *Civic*

11   *Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, 14 (1977) quoting 3 Witkin, *California*

12   *Procedure* (2nd ed. 1971) Pleading, § 674, pp. 2300-2301; *see Cruz v. U.S.*, 219 F.Supp. 2d 1027,

13   1040 (N.D. Cal. 2002) (An accounting cause of action is proper where "the underlying action and

14   accounts are so complicated that a normal action for a fixed sum is not practical."); *Towers,*

15   *supra*, 5 B.R. at 786, 793-94; *Mankert v. Elmatco Products, Inc.*, 854 A.2d 766, 769 (Conn. Ct.

16   App. 2004) (same).

17       Directly contrary to Defendants' arguments, the accounting remedy which Plaintiffs seek

18   is markedly different than a damage award. First, an accounting presupposes that, as here, the

19   fiduciary controlled and/or was obligated to control all transactions involving Plaintiffs' assets

20   and that the fiduciary has – or *should* have and can readily obtain – the documentation to explain

21   and justify all such transactions. As a result – and a matter of common sense – trust law places

22   the burden on the fiduciary to identify and explain all transactions involving the assets. *See*

23   *Towers, supra*, 5 B.R. at 793 ("An accounting" is essentially a form of disclosure, predicated

24   upon the legal inability of a plaintiff to determine if, or how much, money is due him from

25   another."); *Keeble v. Brown*, 135 Cal. App. 2d 126, 133 (1954) ("Where there is a fiduciary

26   _____

[6] It is a "primary duty" of a Trustee to "maintain records of transactions so complete and accurate that he can show
by them his faithfulness to his trust. It is not enough for him to know that he is honestly performing his duty. Since,
27   generally, the burden of proof rests upon him to prove fidelity, he must be able to sustain his position by honest
records. *Engelsmann v. Holekamp*, 402 S.W.2d 382, 389 (Mo. 1966), citing *Bogert on Trusts and Trustees*, § 962;
*See also, Corpus Christi Bank & Trust v. Roberts*, 587 S.W.2d 173, 181 (Tex. Ct. App. 1979); *Restatement (Second)*
28   *of Trusts*, § 172 & Cmts. a-c (1959); *Scott, The Law of Trusts*, § 172 at p. 1399-1400 (3d Ed. 1967).

1   relationship . . and the facts are peculiarly within the knowledge of one of the parties . . . an

2   accounting lies."); *Sadler v. Jorad, Inc.*, 680 N.W. 2d 165, 172 (Neb. 2004) ( Where one "is in

3   control of the books and has managed the business," he "in the position of a trustee and must

4   make a proper accounting.").

5        Thus, unlike a damages remedy, an accounting remedy involved the courts exercise

6   equitable powers to require the fiduciary (here, Defendants) to explain and justify all transactions

7   involving the assets under its control (here, the Plan assets); rather than requiring Plaintiffs –

8   already at a disadvantage because Defendants control all necessary information – to ferret out and

9   attack Defendants' improper transactions.

10       Finally, in *Towers, supra*, 5 B.R. at 795-96, this Court directly rejected Defendants'

11  argument that, because an accounting might ultimately result the Defendants' payment of monies

12  back into the Plan, Plaintiffs' request for an accounting is nothing more than a *legal* damages

13  claim.  In *Towers*, the Court acknowledged that an accounting might result in the entry of a

14  money judgment in favor of the party who requested it.  *Id.* at 395.  But the possibility of a

15  money judgment did not transform the traditionally-equitable accounting remedy into legal relief:

16  "We need not, and do not, go so far as to say that any award of monetary relief must necessarily

17  be 'legal' relief."  Where monetary relief is an "integral part of an equitable remedy" it remains

18  equitable in nature.  *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 196 (1974)).

19       Simply stated, Plaintiffs' request for an accounting is far more than a request for a

20  calculation and payment of damages as Defendants contend.  Wholly consistent with §502(a)(3),

21  Plaintiffs' claim for an accounting is unquestionably equitable, appropriate to the circumstances

22  of this case, and in addition to, or in the alternative of, the relief the request in Count I under

23  §502(a)(2).

24       **C.**    **Remedies Plaintiffs' Seek Under Count II Are Proper Under §502(a)(3).**

25       Although they are undeniably equitable, Defendants Bechtel and Damsgaard attack

26  Plaintiffs' requests for restitution, constructive trust, an accounting for profits, an injunction and

27  a declaratory judgment under § 502(a)(3).  Much of their argument, focused upon injunctive and

28  declaratory relied, simply restates their insistence they are not fiduciaries.  The rest of

1    Defendants' contentions ignore the content of the Complaint and federal notice pleading

2    standards. They complain that Plaintiffs do not allege sufficient facts to support restitution,

3    unjust enrichment and accounting-for-profits remedies. But they ignore that Plaintiffs seek

4    details, through an accounting, regarding exactly such issues: paragraph 134 expressly requests

5    that all amounts revealed to be improper, excessive, or in violation of ERISA (including profits

6    by Defendants) be returned to the Plan. Consistent with this request, the Complaint's prayer

7    requests that the Court "impose a constructive trust on any monies by which the Defendants were

8    *unjustly enriched* as a result of their breaches of fiduciary duty and cause the Defendants to

9    disgorge such monies and return them to the Plan." (FAC p. 40 (emphasis added).) As set forth

10   above, there is little room for dispute that such an accounting is equitable and appropriate under

11   § 502(a)(3).

12        Further, it is undisputable that Plaintiffs seek injunctive relief regarding future charges of

13   excessive fees and seek the removal of fiduciaries who have breached their fiduciary duty to the

14   Plan.

15        Finally, the Plaintiffs ultimately seek to enforce the Plan terms as contained in the Plan

16   document. Paragraph 6.02(i) states that the Committee may only provide payment for all

17   expenses from the Trust fund to the extent permitted by applicable law.

18        **D.    Defendants' Motion to Dismiss Count II Based Upon Relief Requested in The
               Prayer Lacks *Any* Legal Support.**
19

20        As set forth above, Count II seeks an accounting, a traditional equitable remedy for

21   fiduciary breaches, under ERISA §502(a)(3). In their prayer for relief under *both* Counts of the

22   Complaint, Plaintiffs request a variety of remedies available under ERISA §§ 502(a)(2) & (3)

23   and "any other and further relief the Court deems appropriate." (FAC p. 35.)

24        Defendants contend that Count II should be dismissed because, under ERISA §502(a)(3),

25   *some* of the relief Plaintiffs request in the prayer is allegedly not equitable, not appropriate, or not

26   available under the facts alleged. In requesting dismissal on this basis, Defendants ignore "the

27   basic principle that a *prayer* for relief is not as such a part of the *claim* for relief." *Alexian Bros.*

28   *Health Providers Ass'n, Inc. v. Humana Health Plan Inc.*, 227 F.Supp.2d 880, 895 (N.D. Ill.

1 | 2003) (emphasis added); *see Bowman v. Alaska Airlines, Inc.*, 14 F.R.D. 70, 73 (D. Ct. Territory

2 | of Alaska, 1952) ("Prayers for relief not justified by the pleadings of the law are mere surplusage

3 | and require no specific attention."). The facts alleged in the Complaint and ultimately proven at

4 | trial, *not the remedies requested in the Complaint's prayer*, determine relief Plaintiffs ultimately

5 | is awarded. *Landmark Equity Corp. v. Runnells*, 83 B.R. 362 (E.D. Va. 1987) ("A plaintiff's

6 | right to recovery is controlled by the allegations contained in the body of his complaint."). Rule

7 | 54(c) of the Federal Rules of Civil Procedure expressly provides:

8 | DEMAND FOR JUDGMENT. A judgment by default shall not be different in
9 | kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, **every final**
10 | **judgment shall grant the relief to which the party in whose favor it is**
**rendered is entitled, even if the party has not demanded such relief in the**
11 | **party's pleadings.**

12 | Fed. R. Civ. P. 54(c) (emphasis added).

13 | Simply stated, there is no legal basis whatsoever for Defendants' argument that Count II

14 | should be dismissed based upon Defendants' contention that *some* of the relief the *entire*

15 | Complaint seeks in its prayer is not proper under §502(a)(3). Their motion should be denied.

16 | **III.   Plaintiffs' Request for a Jury Trial is Proper Under ERISA § 502(a)(2).**

17 | Laid bare of many decades of 7th Amendment jurisprudence, the question at the heart of

18 | the right to a jury trial in civil cases is whether the claim at issue seeks legal, rather then

19 | equitable, relief. While Courts have struggled to determine whether ERISA §502(a)(2) causes of

20 | action are legal or equitable, in 2002 the Supreme Court helped to clarify the issue. In *Great-*

21 | *West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 220-21 (2002), the Court held an

22 | ERISA plaintiff's cause of action for specific performance of plan reimbursement provision was

23 | legal, not equitable. The Court reasoned:

24 | Almost invariably ... suits seeking (whether by judgment, injunction, or
declaration) to compel the defendants to pay a sum of money to the plaintiff are
25 | suits for "money damages," as that phrase has traditionally been applied, since
they seek no more than compensation for loss resulting from the defendants'
26 | breach of legal duty." And "[m]oney damages are, of course, the classic form of
*legal* relief."
27 |

28 | *Id.* at 210 (emphasis and ellipsis in original), quoting *Bowen v. Massachusetts*, 478 U.S. 879,

1 | 918-19 (1988) (Scalia, J. dissenting); *Mertens v. Hewitt Associates*, 508 U.S. 248, 251 (1993).

2 |     The Court's holding and reasoning in *Great-West* invited more thoughtful and substantive

3 | consideration of the nature of ERISA's statutory remedies. Despite this, Defendants rely solely

4 | on: (1) cases decided before *Great-West* in requesting that Plaintiffs' jury demand be stricken;

5 | and (2) denials of jury trials in cases seeking judicial review benefits denials by administrators of

6 | ERISA plans under ERISA §502(a)(3). Defendants do not cite a single case considering the right

7 | to a jury trial where plaintiffs seek damages for breach of fiduciary duty under §502(a)(2). The

8 | Ninth Circuit apparently has never considered whether such a claim is legal or equitable.

9 |     Plaintiffs §502(a)(2) claim seeks damages to compensate the Plan for its losses caused by

10 | the Defendants' breach of their fiduciary duty to ensure that Plan fees and expenses are

11 | reasonable, incurred for the Plan's sole benefit, and fully disclosed. Thus, Plaintiffs' §502(a)(2)

12 | claim seeks "the classic form of *legal* relief" and Plaintiffs are entitled to a jury trial. *Great-*

13 | *West,* 534 U.S. at 210.

### 1. Congress Authorized Legal Relief Under § 502(a)(2), Thereby Entitling Parties To A Jury Trial.

16 |     A statute can create a right to jury trial without expressly stating so. *See, e.g., Lorillard v.*

17 | *Pons,* 434 U.S. 575, 580-83 (1978). ERISA does just that by implicitly authorizing jury trials on

18 | claims seeking legal relief.

19 |     Many courts, interpreting many statutes, have routinely inferred that Congress intended to

20 | confer the right to jury trial when a statutory cause of action authorizes legal relief. In *Lorillard,*

21 | the Supreme Court inferred a right to jury trial from Congress' use of the phrase "legal or

22 | equitable relief" in the Age Discrimination in Employment Act. *Lorillard,* 434 U.S. at 580-83.

23 | The Court explained that Congress knew the significance of providing legal relief and hence

24 | must have intended to create a right to jury trial on claims seeking that relief. *Id.* at 583; *cf.*

25 | *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 347 (1998).

26 |     Courts have recognized an implied right to jury trial even when the federal statute does

27 | not use the word "legal," so long as the statute nonetheless permits legal relief. For example, the

28 | word "damages" in the Family Medical Leave Act (FMLA) prompted the Sixth Circuit to

1  conclude that Congress intended to create a right to jury trial for claims seeking such relief,

2  particularly as Congress used the phrase "equitable relief," rather than "damages," in other

3  subsections of the FMLA. *See Frizzell v. Southwest Motor Freight,* 154 F.3d 641, 643 (6th Cir.

4  1998).  The United States District Court for the Northern District of Illinois inferred a right to

5  jury trial under ERISA § 502(a)(2)—the very subsection at issue here—precisely because it

6  permits legal relief, even though it does not use the word "legal" or "damages." *See Donovan v.*

7  *Robbins,* 579 F. Supp. 817, 820 (N.D. Ill. 1984) ("Since legal relief is authorized by ERISA, we

8  infer that Congress intended thereby to provide for a jury trial in an action under ERISA to secure

9  a legal remedy.");[7] *see also Stamps v. Michigan Teamsters Joint Council,* 431 F. Supp. 745, 746,

10  747 (E.D. Mich. 1977) (finding implied right to jury trial under § 502(a)(1)).  Simply stated,

11  when Congress has authorized legal relief—whether implicitly or explicitly—courts from the

12  Supreme Court to the district courts have found a right to a jury trial.

13      Section 502 is replete with indications that Congress authorized legal relief in claims

14  brought under subsection (a)(2), and hence that Congress has implied a right to jury trial under

15  that subsection. *See Coan v. Kaufman,* 457 F.3d 250, 254 (2d Cir. 2006) (explaining that

16  plaintiff brought action under "section 502(a)(2) of ERISA, which allows participants . . . to

17  bring suit . . . for *legal* and equitable remedies") (emphasis added); *In re Goodyear Tire &*

18  *Rubber Co. ERISA Litigation,* 438 F. Supp. 2d 783, 796 (N.D. Ohio 2006) (concluding that

19  plaintiffs could "pursue legal damages on behalf of the Plans under Section 502(a)(2)"); *Jackson*

20  *v. Truck Driver's Union,* 933 F. Supp. 1124, 1135 (D. Mass. 1996) (construing ERISA §§ 409(a)

21  & 502(a)(2) as permitting actions for damages); *Donovan v. Robbins,* 99 F.R.D. 593 (N.D. Ill.

22  1983) (based on ERISA §§ 409 & 502(a)(2), court rejected argument that ERISA did not create

23  legal remedies); *Gilliam v. Edwards,* 492 F. Supp. 1255, 1266-67 (D.N.J. 1980) (concluding

24  ERISA § 409 authorizes legal relief).

25      A comparison of the relief authorized in ERISA § 502(a)(2) with that in 502(a)(3) clearly

26  evidences Congress' intend to provide legal relief in § 502(a)(2).  Congress's expressly and

27

28  _____

[7] That court ultimately concluded that no right to jury trial arose in that particular case because the plaintiff—the Secretary of Labor—sought "equitable relief exclusively." *Donovan,* 579 F. Supp. at 820.

1   strictly limited plaintiffs suing under § 502(a)(3) to demanding "appropriate *equitable* relief."  In

2   contrast, Congress imposed no similar limitation in § 502(a)(2).  Section 502(a)(2) allows

3   plaintiffs to demand all types of "appropriate relief" from plan fiduciaries who breach their

4   fiduciary duties.  *Compare* 29 U.S.C. § 1132(a)(2) *with* 29 U.S.C. § 1132(a)(3).  ERISA § 409,

5   regarding "Liability for Breach of Fiduciary Duty," further clarifies the meaning of "appropriate

6   relief" in § 502(a)(2).  29 U.S.C. § 1109.  Section 409 imposes personal liability on fiduciaries

7   for breaches of their duties, requires them "*to make good to such plan any losses* to the plan

8   resulting from such breach," and subjects them "to such other equitable or *remedial* relief as the

9   court may deem appropriate." *See* 29 U.S.C. § 1109 (emphasis added).  Authorizing Plaintiffs to

10  use § 502(a)(2) to force defendant-fiduciaries personally to "make good" to the plan for "any

11  losses" unquestionably involves "compel[ling] the defendants to pay a sum of money to the

12  plaintiff[s]." *Great-West,* 534 U.S. at 210; 29 U.S.C. § 1109.  In short, § 502(a)(2) authorizes

13  legal relief, entitling Plaintiffs to a jury trial.

14          Moreover, the court would render § 502(a)(2) superfluous by interpreting it to authorize

15  only equitable relief, and would thereby run afoul of a fundamental principle of statutory

16  construction. *See Duncan v. Walker,* 533 U.S. 167, 174 (2001) (court should avoid construing a

17  statute in a way that renders superfluous, void, or insignificant any clause, sentence, or word in

18  statute).  Both § 502(a)(2) and § 502(a)(3) allow participants and beneficiaries to sue for redress

19  of fiduciary breaches under ERISA § 409.

20          Section 502(a)(3) allows "a participant, beneficiary or fiduciary" to sue to: (A) *enjoin*

21  violations of ERISA or the terms of a plan; or  (B) "to obtain other appropriate *equitable* relief"

22  to: (*i*) redress such violations, or (*ii*) to enforce ERISA or  the terms of a plan. *See* 29 U.S.C. §

23  1132(a)(3) (emphasis added).  Thus, § 502(a)(3) provides for a broad spectrum of equitable

24  relief, but *only* equitable relief. *Id.*  Section § 502(a)(2) would exactly duplicate the claims and

25  remedies available under § 502(a)(3) *unless* § 502(a)(2) authorizes remedies that § 502(a)(3)

26  does not – legal remedies.

27          Simply stated, unless § 502(a)(2) authorizes legal relief, it would superfluous and

28  unnecessary.  A plaintiff suing a fiduciary under §503(a)(3) could demand all of the remedies

1  available under ERISA.  Even though it expressly provides a cause of action for breach of

2  fiduciary duty under § 409, a plaintiff pursuing such a case could wholly ignore § 502(a)(2).  If

3  participants and beneficiaries' claims under § 502(a)(2) are to have any independent significance,

4  and if Congress is deemed to have acted purposefully in enacting ERISA, § 502(a)(2) must

5  authorize legal relief.  In turn, pursuant to long-established principles, Congress also intended to

6  confer the right to a jury trial on parties in § 502(a)(2) lawsuits.  *Donovan v. Robbins,* 579 F.

7  Supp. at 747; *cf. Lorillard,* 434 U.S. at 580-83; *Frizzell,* 154 F.3d at 643-44; *Stamps,* 431 F.

8  Supp. at 747.

9

10
       **2.**       **Regardless of Congressional Intent, The Seventh Amendment
Guarantees A Jury Trial For Claims Seeking Legal Relief Under
ERISA § 502(a)(2).**

11  Courts have held that the Seventh Amendment guarantees a jury trial on a variety of

12  ERISA claims, including claims brought under § 502(a)(2). *See, e.g., Bona v. Barasch,* No. 01

13  Civ. 2289, 2003 WL 1395932, at *33-35 (S.D. N.Y. Mar. 20, 2003); *Utilicorp United Inc. v.*

14  *Kemper Financial Serv., Inc.,* 741 F. Supp. 1363, 1367 (W.D. Mo. 1989); *Cedar Rapids*

15  *Pediatric Clinic Employees Pension Plan v. Continental Assur. Co.,* No. 86-5192, 1988 WL

16  216169 (W.D. Ark. July 25, 1988).[8]  The relevant Seventh Amendment analysis leads to the

17  same conclusion here.

18  In analyzing the right to a jury under the Seventh Amendment, courts should consider

19  whether the nature of the action and the nature of the remedy are legal or equitable.  *See, e.g.,*

20  *Tull v. United States,* 481 U.S. 412, 417 (1987).  But the Supreme Court has repeatedly

21  emphasized that the nature of the remedy is far more important than that of the action in this

22  analysis. *See Chauffeurs, Teamsters & Helpers v. Terry,* 494 U.S. 558, 564-65, 571 & n.8

23  (1990); *see also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 (1989); *Tull,* 481 U.S. at 421.

24  Defendants' motion does not even address this question.

25  Numerous cases illustrate the primary role that the nature of the remedy plays in the

26  ---

[8] For cases finding a right to jury trial under § 502(a)(1), see *Lamberty v. Premier Millwork & Lumber Co.,* 329 F.
Supp. 2d 737, 744-45 (E.D. Va. 2004); *Mullins v. Pfizer, Inc.,* 899 F. Supp. 69, 75-76 (D. Conn. 1995); *Algie v.*
27  *RCA Global Communications, Inc.,* 891 F. Supp. 870, 872-75 (S.D.N.Y. 1994); *McDonald v. Artcraft Elec. Supply
Co.,* 774 F. Supp. 29, 33-36 (D.D.C. 1991); *Rhodes v. Piggly Wiggly Ala. Distributing Co.,* 741 F. Supp. 1542,
1543-46 (N.D. Ala. 1990); *Gangitano v. NN Investors Life Ins. Co.,* 733 F. Supp. 342, 343-44 (S.D. Fla. 1990); and
28  *Abbarno v. Carborundum Co.,* 682 F. Supp. 179, 180-82 (W.D.N.Y. 1988).

1   Seventh Amendment analysis.  When the plaintiff seeks equitable relief, courts have denied a

2   jury trial, even though the nature of the action was legal.  *See Spinelli v. Gaughan,* 12 F.3d 853,

3   857 (9th Cir. 1993) (concluding that even though plaintiff's claim was legal, plaintiff had no

4   right to jury trial because she sought equitable remedy).  Conversely, when the plaintiff has

5   sought legal relief, courts have granted a jury trial, despite the action's equitable nature.  *See,*

6   *e.g., Pereira v. Farace,* 413 F.3d 330, 339-41 (2d Cir. 2005); *Bona v. Barasch,* No. 01 Civ. 2289,

7   2003 WL 1395932, at *35 (S.D.N.Y. Mar. 20, 2003).

8           In *Pereira v. Farace,* for example, the Second Circuit concluded that the Seventh

9   Amendment guaranteed the plaintiff a jury trial, even though he brought an equitable claim for

10  breach of fiduciary duty.  The court's decision turned on the fact that plaintiff sought monetary

11  damages—the most classic form of legal relief.  *Pereira,* 413 F.3d at 339-41; *see also Terry,* 494

12  U.S. at 569-70 (jury trial granted where first part of test was in "equipoise," because plaintiffs

13  brought both legal and equitable claims, and second part of test indicated relief sought was legal).

14          In *Bona v. Barasch,* the district court held the plaintiff had a right to a jury trial under

15  ERISA § 502(a)(2)—the very statute at issue here—in part because the equitable nature of the

16  claim did not overcome the legal nature of the remedy sought.  *Bona, supra,* 2003 WL 1395932,

17  at *35; *see also McDonald v. Artcraft Elec. Supply Co.,* 774 F. Supp. 29, 35 (D.D.C. 1991) ("If a

18  court can, under ERISA, award traditional contract and tort remedies—including compensatory

19  monetary relief—then the ERISA claim seeking such relief must be legal, not equitable.");

20  *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F. Supp. 882, 890 (S.D.N.Y. 1990) ("[t]aken together,

21  the Supreme Court's recent cases suggest that statutory causes of actions giving rise to individual

22  claims for money damages are rarely, if ever, beyond the reach of the Seventh Amendment").

23          Even if consideration of the nature of the action and the remedy does not clearly answer

24  whether the Seventh Amendment guarantees a jury trial, the strong federal policy favoring jury

25  trials requires that any doubt be resolved in favor of the parties' right to a jury.  *See Utilicorp*

26  *United,* 741 F. Supp. at 1367 (concluding that in questionable cases, federal policy favoring jury

27  trials controls); *NSC Intern. Corp. v. Ryan,* 531 F. Supp. 362, 364 (N.D. Ill. 1981) (citing federal

28  policy to grant jury trial in doubtful case); *Bertrand v. Orkin Exterminating Co.,* 419 F. Supp.

1   1123, 1131 (N.D. Ill. 1976) (recognizing that "strong federal policy favoring jury trials requires"

2   that court resolve all doubts "in favor of granting a trial by jury").

3       **3.    Plaintiffs Are Entitled To A Jury Trial Because Their
                §502(a)(2)Claim Seeks Legal Relief.**

4

5       Because Plaintiffs seek legal relief under § 502(a)(2), they are entitled to a jury trial both

6   as a matter of congressional intent and as a protected individual right under the Seventh

7   Amendment.  Plaintiffs' Complaint requests "actual damages to the Plans in the amount of [their]

8   monetary losses." (*See* FAC at ¶ p. 40.)  As a general rule, monetary relief, such as Plaintiffs

9   request, is legal. *See City of Monterey v. Del Monte Dunes,* 526 U.S. 687, 710 (1999); *Feltner,*

10  523 U.S. at 352; *Terry,* 494 U.S. at 570; *see also Great-West, supra,* 534 U.S. at 210, 220-21.

11  Even when a plaintiff alleges a breach of fiduciary duty, a request for "monetary relief for all

12  losses" sustained as a result of that breach constitutes legal relief. *See Mertens v. Hewitt*

13  *Associates,* 508 U.S. 248, 255 (1993).

14      Moreover, as a general matter, legal relief measures recovery by plaintiff's losses,

15  whereas equitable relief measures the recovery by defendant's gain. *See City of Monterey,* 526

16  U.S. at 710-11; *Feltner, supra,* 523 U.S. at 352; *Calhoun v. Trans World Airlines, Inc.,* 400 F.3d

17  593, 596-97 (8th Cir. 2005).  Under this standard, Plaintiffs' request that Defendants compensate

18  the Plan for losses caused by their breach of fiduciary duty constitutes legal relief and entitles

19  Plaintiffs to a jury trial.

20      Even if Defendants consider Plaintiffs' damages claims as seeking restitution, it would

21  have to be *legal* restitution.  As the Supreme Court explained in *Great-West Life,* "[i]n the days

22  of the divided bench, restitution was available in certain cases at *law,* and in certain others in

23  equity." *Great-West,* 534 U.S. at 212 (emphasis added).  When the plaintiff seeks "to obtain a

24  judgment imposing a merely personal liability upon the defendant to pay a sum of money,"

25  restitution is legal. *Id.* at 213.  "[F]or restitution to lie in equity, the action generally must seek

26  *not to impose personal liability* on the defendant, but to restore to the plaintiff particular funds or

27  property in the defendant's possession." *Id.* at 214 (emphasis added), *compare* ERISA §409, 29

28  U.S.C. § 1109 (Making fiduciaries "*personally liable* to make good to such plan *any losses*"

1 | resulting from a breach of fiduciary duty." (Emphasis added).

2 | That Plaintiffs request both legal and equitable relief does not alter this analysis. The

3 | aspects of Plaintiffs' claims that seek legal relief are triable to a jury, even if there may be

4 | residual equitable questions for the court to decide. *See Ross v. Bernhard*, 396 U.S. 531, 537-38

5 | (1970); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470 (1962); *Beacon Theatres, Inc. v. Westover*,

6 | 359 U.S. 500 (1959). Thus, the mere fact that Plaintiffs chose to exercise their right to seek

7 | alternative and additional equitable remedies does not defeat the legal nature of the damages that

8 | they seek or Plaintiffs' entitlement to a jury trial.

9 |     **4.**     **Defendants Ignore *Great-West,* Wholly Fail to Consider The Nature of Relief Sought, and Undertake No Analysis of Plaintiffs' Jury Demand.**

10 |

11 | In two sentences that serve as introductions to string-cites, Defendants contend that "it is

12 | beyond dispute" that the Seventh Amendment, ERISA, and, specifically, ERISA § 502 do not

13 | provide for a jury trial in this case. But Defendants rely entirely upon cases decided before

14 | *Great-West*. As a result, they wholly ignore the narrowly-defined view of equitable relief, and

15 | the form-over-substance approach, that *Great-West Life* adopts for ERISA cases. Defendants

16 | make no attempt to analyze the various issues, set forth above, that underlie ERISA litigants' jury

17 | trial rights, nor do they consider the damages remedy that Plaintiffs seek under § 502(a)(2).

18 | *Great-West Life* narrowly defined the scope of relief that should be considered equitable

19 | under ERISA, and thereby commensurately expanded the spectrum of legal relief that ERISA

20 | authorizes. In so doing, *Great-West Life* effectively abrogated numerous prior cases that based

21 | their holdings upon an expansive view of the equitable relief under ERISA. *See, e.g., Bona v.*

22 | *Barasch*, No. 01 Civ. 2289, 2003 WL 1395932, at *34-35 (S.D. N.Y. Mar. 20, 2003).

23 | Simply stated, pre-*Great-West Life*, defendants may have been able to defeat plaintiffs'

24 | jury trial rights by a simple syllogism: "ERISA creates only equitable remedies; plaintiffs sue

25 | under ERISA; thus plaintiffs seek only equitable remedies." But, in light of *Great-West Life* and

26 | its progeny, substantive analysis of the nature of the relief Plaintiffs seek has replaced superficial

27 | syllogisms. Merely contending, without more, that it is "beyond dispute" that Plaintiffs are not

28 | entitled to a jury trial no longer will carry the day.

1      In seeking to deny Plaintiffs' right to a jury trial on their § 502(a)(2) cause of action,

2  Defendants fail to cite any cases that reached such a result based upon an analysis of

3  circumstances similar to those here.  In *Thomas v. Oregon Fruit Products*, 228 F.3d 991, 995-98

4  (9th Cir. 2000), the court considered whether an employee was entitled to a jury trial in an action

5  seeking review of and ERISA plan administrators' denial of benefits.  Reaching far beyond the

6  facts presented, *Thomas* suggests that ERISA does not permit jury trials at all based upon the

7  assumption that Congress had limited the remedies authorized *under all of ERISA § 502* to "those

8  available in equity." *Id.* at 996.[9]  This conclusion *both* is wrong *and* has no application here.

9      First, Thomas' holding is outright wrong.  In *Great-West Life*, the Supreme Court rejected

10  a bright-line rule that all ERISA causes of action are equitable, and made unmistakably clear that

11  the nature of relief that an ERISA plaintiff seeks is the primary factor in determining whether

12  his/her action is legal or equitable.  *Great-West Life,* 534 U.S. 204 at 210, 220-21.  Thus, in

13  *Great-West Life,* the Supreme Court disavowed the premise upon which *Thomas* based its

14  holding that *all ERISA plaintiffs* seek only equitable relief are not entitled to jury trials.

15      Second, *Thomas* involved an employee-participant's challenge to a benefits denial.  It did

16  not consider a participant's cause of action under ERISA § 502(a)(2) seeking to impose personal

17  liability for breach of fiduciary duty and to force the breaching fiduciary to "make good" to the

18  plan under ERISA §409.  Thus, *Thomas'* broadly-stated holding (if still valid in any respect)

19  applies very narrowly — only to employee's requests for review of benefit denials.  It has

20  nothing to do claims for breach of fiduciary duty under ERISA §§ 409 and 502(a)(2).

21      Defendants' remaining cases are equally inapposite.  Each was decided long before

22  *Great-West Life*, and none consider an ERISA § 409 cause of action seeking damages for breach

23  of fiduciary duty under ERISA § 502(a)(2).  Instead, *Nevill v. Shell Oil Co.*, 835 F.2d 209, 212-

24  13 (9th Cir 1987), without discussion or analysis, upheld the district court's denial of a jury trial

25  to a plaintiffs seeking only review of whether a benefits denial was arbitrary and capricious.

26  _____

[9] *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1114 (9th Cir. 2001), remanded
plaintiffs' request for review of an ERISA plan administrator's benefits denial to the district court.  Although there

27  was no suggestion that plaintiffs had demanded a jury trial, the court cited *Thomas* in ordering a bench trial and
gratuitously commented that there were no jury trials under ERISA. *Id.*  The courts' discussion of the ERISA jury

28  trial issue contained, in total, twelve words. . Despite this, Defendants rely on *Ingram* as authority that Plaintiffs'
breach of fiduciary claim for damages under ERISA §§ 409 and 502(a)(2)does not merit jury trial.

1   Similarly, in *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir. 1984), plaintiffs sought

2   review of a plan administrator's denial of severance benefits.  Plaintiffs waived their right to a

3   jury trial by failing to make a timely jury demand.  The Ninth Circuit held upheld the district

4   courts' refusal to set aside this waiver, observing that Plaintiffs offered no explanation for it.  *Id.*

5   As an apparent afterthought, without discussion or analysis, the Court observed in a single

6   sentence there was not an "independent" constitutional or statutory right to jury trials in ERISA.

7   *Id.*  In *Spinelli v. Gaughan*, 12 F.3d 853, 857-58 (9th Cir 1993), the Court treated plaintiffs'

8   preempted state-law retaliatory discharge cause of action as a legal claim under ERISA §510,

9   which could be asserted via ERISA § 502(a)(3).  Because § 502(a)(3) provides for only equitable

10   relief, the Court held that the plaintiff was not entitled to a jury trial.  *Id.*  These authorities do not

11   support Defendants' position.

12   **IV.   Reliance on ERISA's Statute of Limitations is An Affirmative Defense That
         Plaintiffs Need Not Address In The Complaint.**

13

14         In addition to breaching their fiduciary duties by causing or allowing excessive fees to be

15   charged to the Plan, the Complaint explains that, though hidden revenue sharing transfers,

16   Defendants deprived Plan participants of true and accurate information about the Plan's fees and

17   expenses.  (FAC ¶¶ 81-102.)  The Complaint details how Defendants failed to disclose to a litany

18   of information about those fees and expenses, to whom they were paid, for what, whether they

19   were reasonable for the services provided, how they affected participants' account balances, the

20   total amount of fees the Plan paid service providers, and related facts.  FAC ¶¶ 65-102.  To make

21   matters worse, the Complaint explains that Defendants manipulated the Plan's accounting of fees

22   and expenses, and affirmatively mislead participants regarding illusory multi-million dollar

23   savings in a year where such expenses actually increased by more than two million dollars.

24   (FAC ¶¶ 99-116.)  By this comprehensive campaign of deception and non-disclosure policy,

25   Defendants ensured that important details regarding the Plan's fees were hidden from

26   participants so that participants lacked the information necessary to understand and protect their

27   interests in the Plan.  (FAC ¶¶ 114, 119 G-H.)  Plaintiffs allege that by this conduct, Defendants

28

1 | tolled the statute of limitations.[10]  (FAC ¶ 116.)

2 | Reliance upon "the statute of limitations is an affirmative defense, and a complaint states

3 | a claim whether or not a defense is potentially available." *United States v. N. Trust Co.*, 372 F.3d

4 | 886, 888 (7th Cir. 2004).  For this reason, complaints need not contain *any* information about

5 | defenses and may not be dismissed based on such an omission.  *Xechem, Inc. v. Bristol-Myers*

6 | *Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004). Federal pleading rules generally do not require a

7 | plaintiff to anticipate and plead around an affirmative defense.  *See Gomez v. Toledo,* 446 U.S.

8 | 635, 640 (1980); *see Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) ("a plaintiff is

9 | not required to negate an affirmative defense in his complaint").

10 | Here, Defendants have yet to answer the Complaint.  They have not raised a statute of

11 | limitations defense.  Although the Complaint *need not contain any allegations at all* regarding

12 | the statute of limitations or the tolling of the statute, Defendants contend that Plaintiffs, without

13 | any discovery, must plead the specific facts proving fraudulent concealment with particularity

14 | under Fed. R. Civ. P. 9(b).  By providing Defendants notice that they intend to pursue a

15 | fraudulent concealment theory to toll the statute of limitations, if Defendants assert such an

16 | affirmative defense, Plaintiffs have far exceeded federal pleading standards.

17 | The Defendants have not identified a single case in which a motion to dismiss was

18 | granted based upon insufficient allegations in a compliant of fraudulent concealment in

19 | opposition to a statute of limitations defense that had yet to be asserted.  All of Defendants'

20 | authority considers whether Plaintiffs have, *after discovery*, brought forth evidence to withstand

21 | *motions summary judgment* challenging their argument that the statute of limitations was tolled

22 | by fraudulent concealment.  *See Larson v. Northrop Corp.*, 21 F.3d 1164, 1166 (D.C.Cir. 1994)

23 | ("Following discovery," the parties filed cross motions for summary judgment.); *Barker v.*

24 | *American Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995) (Court granted motion for

25 | summary judgment against Plaintiffs on fraudulent concealment tolling theory because "[n]either

26 | the plaintiffs' complaint *nor the memorandum in support of their motion for summary judgment*

27 |

28 | [10] To the extent that the Complaint must do so, Plaintiffs submit that these allegations, and reasonable inferences drawn from them in Plaintiffs' favor, fulfill the pleading requirements that Defendants would have the Court impose.

1   sets forth specific facts to establish that [defendants] committed fraud."  (Emphasis added)); *Volk*

2   *v. D.A. Davidson & Co.*, 816 F.2d 1406, 1409 & 1416 (9th Cir. 1987) (*Summary judgment*

3   granted on statute of limitations grounds because plaintiffs did "not present any facts indicating

4   an affirmative effort on the part of any defendant to mislead them or to conceal the fraud.");

5   *Foltz v. U.S. News and World Report*, 663 F. Supp. 1494, 1537 (D.D.C. 1987) (After a *bench*

6   *trial*, court held that plaintiff had failed to prove fraudulent concealment.).

7          Accordingly, at the initial pleadings stage – before Defendants have answered – there is

8   neither a legal basis nor a practical reason to strike Plaintiffs' allegations notifying the Court and

9   Defendants of the facts underlying Plaintiffs' anticipated response to any statute of limitations

10  defense.

11  Dated:  January 19, 2007                    Respectfully submitted,

12

13                                               SCHLICHTER, BOGARD & DENTON

14                                               Daniel V. Conlisk (Admitted *pro hac vice*)
                                                 Jerome J. Schlichter - #0545143
15                                               Heather Lea (Admitted *pro hac vice*)
                                                 100 South Fourth Street, Suite 900
16                                               St. Louis, MO 63102
                                                 Tel:    314-621-6115
17                                               Fax:    314-621-7151

18                                               FUTTERMAN & DUPREE LLP

19                                               _____/s/_____
                                                 JAMIE L. DUPREE (158105)
20                                               160 Sansome Street, 17th Floor
                                                 San Francisco, California 94104
21                                               Telephone:  (415) 399-3840
                                                 Facsimile:  (415) 399-3838
22                                               E-mail: jdupree@dfdlaw.com

23                                               ATTORNEYS FOR PLAINTIFFS Beverly Kanawi;
                                                 Zoltan Incze and Salvador Aquino as
24                                               representatives of a class of similarly situated
                                                 persons, and on behalf of the Plan
25

26

27

28