IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY KANAWI, et al., | No. C 06-05566 CRB |
| Plaintiffs, | **ORDER** |
| v. | |
| BECHTEL CORP., et al., | |
| Defendants. / | |

This is a putative class action brought under ERISA by certain participants ("Plaintiffs") in Bechtel Corporation's 401(k) retirement plan ("the Plan"). Plaintiffs advance two claims for breach of fiduciary duty against the following defendants: (1) the Bechtel Corporation ("Bechtel"), which established the plan on behalf of its employees; (2) the Bechtel Trust and Thrift Plan Administrative Committee ("the Committee"), a corporate committee appointed by Bechtel that administers the Plan; and (3) Peggi Knox ("Knox"), who works as Vice President of Retirement Plans at Bechtel.

Now pending before the Court is Defendants' motion to dismiss and Plaintiffs' motion for class certification. For the reasons set forth below, Defendants' motion to dismiss is DENIED. The Court defers consideration of Plaintiffs' motion for class certification, as well as Defendants' requests for miscellaneous forms of relief.

//

# BACKGROUND

Bechtel offers a 401(k) retirement plan for its employees, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Second Am. Compl. ¶¶ 1, 7, 29 (hereinafter "SAC"). The Committee, which comprises several Bechtel officers and employees appointed by the company, administers the Plan. Id. ¶ 20. The Committee's duties include establishing "the number and category of investment funds that will be offered under the Plan," and arranging for "the services of an investment manager or managers . . . , each of whom [has] full power and authority to manage, acquire or dispose . . . of any Plan asset under its control." Id. ¶ 45.

The Plan operates under the auspices of what is now called the Bechtel Corporation and State Street Bank Trust Company ("the Master Trust"). Id. ¶ 34. The Master Trust is a legal device that allows multiple ERISA plans to operate together under one corporate umbrella, thereby allowing plan participants to pool their resources and share the costs of running a retirement plan. See id. ¶¶ 32-33. Here, the Master Trust administers both Bechtel's Plan and a smaller plan related to another company ("the Becon Plan"), though Bechtel's Plan constitutes the lion's share of the assets managed under the Master Trust. Id. ¶¶ 34, 36.

Plaintiff's complaint rests on the theory that Defendants breached their fiduciary duties under ERISA by causing plan participants to incur unnecessary and improper fees in connection with the Plan. Id. ¶ 11 ("[T]he fees and expenses paid by the Plain, and thus borne by [Plaintiffs], were unreasonable and excessive; not incurred solely for the benefit of the Plan and its participants; and undisclosed to participants. By subjecting the Plan and its participants to these excessive fees and expenses, and by other conduct set forth below, Defendants violated their fiduciary obligations under ERISA."). Plaintiffs further allege that Defendants breached their fiduciary duty in specific ways. For instance, Plaintiffs allege that Defendants disguised the fees actually incurred by Plan participants by causing such fees to be paid by the Master Trust, rather than by the Plan itself. See generally id. ¶¶ 68-80. Plaintiffs also allege that Defendants concealed the true nature of the fees and expenses

2

incurred by the Plan by failing to disclose the details of certain revenue sharing agreements with other parties who provided services to the Plan. See generally id. ¶¶ 81-98, 103-105. Finally, Plaintiffs allege that Defendants caused the Plan to incur certain fees that are not permissible under ERISA. They insinuate that Defendants improperly used funds from the Plan to pay for certain "settlor" expenses that ought to be borne by an employer such as Bechtel, rather than by the plan participants. See generally id. ¶¶ 99-102.

## DISCUSSION

Defendants set forth numerous arguments in support of their motion to dismiss. First, they argue that the complaint fails to state a claim based on the fees incurred by the Plan. Second, they argue that their compliance with ERISA's safe harbor provisions requires dismissal. Third, they argue that Bechtel must be dismissed for the additional reason that it is not a fiduciary under the Plan. Finally, in the event that the Court sustains the complaint and denies the motion to dismiss, Defendants alternatively request other forms of relief.

### I. Failure to State a Claim

Defendants' primary objection is that the complaint does not set forth facts sufficient to state a claim for breach of fiduciary duty. In particular, Defendants note that the complaint nowhere alleges a failure to comply with applicable statutes and regulations regarding the disclosure of information relating to fees and expenses incurred by the Plan. See, e.g., 29 U.S.C. §§ 123-124; 29 C.F.R. §§ 2520.103-1(b)(2)(ii), 2520.104b-10(d)(3). Defendants argue that the failure to allege a violation of the applicable statutes and regulations is fatal to the complaint.

The Court is unpersuaded. The Supreme Court and the Ninth Circuit have explicitly stated that mere compliance with applicable statutes and regulations under ERISA is not sufficient to establish that a fiduciary has satisfied its obligations under the law. Varity Corp. v. Howe, 516 U.S. 489, 504 (1996) ("If the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose."); Peralta v. Hispanic Business, Inc., 419 F.3d 1064, 1071-72 (9th Cir. 2005) ("Therefore, in order to give meaning and effect to ERISA's fiduciary purpose, more must be required of an

3

administrator than mere compliance with ERISA's express reporting and disclosure provisions."). Thus, Plaintiffs' failure to allege a violation of such statutes and regulations is not fatal to their claims.

The charge here is that Defendants manipulated, disguised, and misrepresented the nature of the fees and expenses incurred by the Plan, thereby causing the participants to incur costs that were excessive and not for their benefit. Based on those allegations, the Court cannot say that it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that Defendants breached their duty to manage the Plan "solely in the interests of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and to provide "sufficient information to make informed decisions with regard to investment alternatives," 29 C.F.R. § 2550.404c-1(b)(3)(i)(B). To hold otherwise would be to hold that any amount of misrepresentation or dishonest dealing on behalf of the Plan, at least with respect to the fees and expenses charged against the Plan, cannot provide the basis for a cause of action so long as such fees and expenses are disclosed in the manner prescribed by ERISA and the Department of Labor's regulations. Defendants have provided no authority for such a proposition, and the Court declines to adopt that position here.

## II. Safe Harbor

Defendants next argue that the complaint should be dismissed because it does not allege a failure to comply with ERISA's so-called "safe harbor" requirements. See 29 U.S.C. § 1104(c) (stating that "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from [a] participant's or beneficiary's exercise of control" over the assets held in an ERISA plan).

Defendants' argument, however, is premature. The safe harbor provision is essentially an affirmative defense that permits a fiduciary to avoid liability upon a showing that the alleged losses were in fact due to choices made by plan participants in exercising control over the assets in the Plan. It is not possible to determine, at the pleadings stage, whether Defendants' conduct falls within ERISA's safe harbor provision. Such a determination hinges against the "beneficiary's exercise of control," an issue that is called

4

into question by the disclosures, or more precisely by the alleged lack of disclosures, that Defendants provided to participants in the Plan.

It is true, as Defendants argue, that a defendant may test the validity of a defense that "appears on the face of the complaint." See Motion at 8 (quoting 5 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1276 (2d ed. 1987)). But the Section 404(c) defense in this case does not appear on the face of the complaint. Rather, the only thing that appears on the complaint's face is that it may eventually be appropriate, depending on the facts of the case, for Defendants to invoke the "safe harbor" provision. Adjudication of that defense at the pleadings stage is only appropriate where the *merits* of the defense, as opposed to merely the *possibility* of the defense, appears on the face of the complaint. Accordingly, at this stage of the litigation, Section 404(c) does not preclude Plaintiffs' claims.

### III. Bechtel

"Suits for breach of ERISA fiduciary duty . . . may be brought only against persons definable as fiduciaries under ERISA. A non-fiduciary does not subject itself to liability simply by participating in a breach of trust by fiduciaries." Batchelor v. Oak Hill Med. Group, 870 F.2d 1446, 1448 (9th Cir. 1989).

Here, Defendants argue that Bechtel must be dismissed because it is not a fiduciary of the Plan. ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In general, an ERISA plan sponsor does not act as a fiduciary in determining to establish, amend, or terminate the plan, but rather acts in a role analogous to the settlor of a trust. Lockheed Corp. v. Spink, 517 U.S. 882 (1996); Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73 (1995).

Here, there is no allegation that Bechtel "renders investment advice." Nor does there appear to be any suggestion that Bechtel exercises "any authority or control respecting

5

management or disposition of [the Plan's] assets," a power that is expressly delegated to the Committee under the terms of the Plan. See Compl. ¶ 45 (quoting Plan Document § 6.01). It may also be true, as Defendants contend, that the only actions taken by Bechtel with respect to the Plan are administrative in nature and involve no discretion at all. See Kyle Ry., Inc. v. Pac. Admin. Servs. Inc., 990 F.2d 513, 516 (9th Cir. 1993) (noting that a parties "are not fiduciaries under ERISA when they merely perform ministerial duties or process claims").

Such a contention, however, requires the Court to look beyond the face of the complaint, which does not specify in detail Bechtel's various responsibilities to the Plan. The complaint identifies Bechtel as the sponsor of the Plan, see Compl. ¶¶ 18, 29-30, and indicates that Bechtel appoints the Committee and thereby exercises at least indirect control over the management of the Plan, id. ¶ 20. Furthermore, according to the complaint, Bechtel has at least one employee who is designated to act as Plan Administrator. Id. ¶ 21. Based on these allegations, it appears unlikely that Bechtel has an independent fiduciary obligation to Plaintiffs. Rather, it appears most likely that any obligation owed by Bechtel to Plan participants derives solely from its appointment of other entities that actually do act as fiduciaries, as well as Bechtel's alleged decision to indemnify such fiduciaries. See id. ¶ 46 (quoting Plan Document § 6.05).

The Court is unable to conclude, however, that Plaintiffs could not prove *any* set of facts demonstrating that Bechtel enjoys some sort of discretionary authority or control over the administration or management of the Plan. Indeed, the allegations set forth in the complaint give rise to at least a *reasonable inference* that Bechtel did indeed act as a fiduciary by exercising its discretion in choosing how the Plan should be administered. See, e.g., id. ¶¶ 75-77 (alleging that "Bechtel *or* the Committee" made certain statements to plan participants about the nature of certain fees and expenses, that "Bechtel *and* the Committee" had changed the way such fees and expenses were incurred, and that a Bechtel employee misled plan participants into believing that there had been reductions in fees and expenses).

Whether a party is a fiduciary under ERISA is not an inquiry into the powers formally assigned to a particular party, but rather a more pragmatic inquiry into the powers actually

exercised by that party and the amount of discretion involved in the exercise of such powers. See generally James Lockhart, When Is Employer, Labor Union, Affiliated Entity or Person, or Pension or Welfare Plan "Fiduciary" Within Meaning of § 3(21)(A)(i) or (iii) of Employee Retirement Income Security Act of 1974 (29 U.S.C.A. § 1002(21)(A)(i) or (iii)), 178 A.L.R. Fed. 129 (2002); Dep't of Labor, Questions and Answers Relating to Fiduciary Responsibility Under the Employee Retirement Income Security Act of 1974, 29 C.F.R. § 2509.75-8 (1976). The facts of Bechtel's actual relationship to the Plan have not yet been developed in this case, and the Court is therefore unable to conclude that Plaintiffs would be unable to prove any set of facts establishing a fiduciary duty on the part of Bechtel. For this reason, dismissal of Bechtel is unwarranted, at least at this stage of the proceedings.

### IV. Miscellaneous Relief

Plaintiffs argue that, even if dismissal is not granted at this point, the Court should provide other forms of relief. Specifically, Defendants argue: (1) that the Court should strike the second claim for breach of fiduciary duty because it is duplicative of the first; (2) that the Court should strike the complaint's demand for recoupment of "investment losses" because such relief is inappropriate as a matter of law; (3) that the Court should strike Plaintiffs' demand for a jury trial; and (4) that the Court should strike certain allegations that Defendants fraudulently concealed their actions.

The Court defers consideration of these various requests. Plaintiffs' claims under ERISA § 502(a)(3) are not precisely duplicative of their claims under ERISA § 502(a)(2). To the extent that Plaintiffs seek relief that is unavailable to them under the statute, Defendants may renew their objections on summary judgment or on a motion in limine, once discovery provides a basis for assessing the potential losses and relief available to Plaintiffs. Similarly, the Court defers consideration of the issue of Plaintiffs' jury demand, which is better assessed on a complete record than in the factless vacuum of a complaint. Finally, the Court rejects Defendants' argument that it should strike allegations of fraudulent concealment. Such allegations are neither irrelevent nor scandalous. Rather, they are directly material to the theory of Plaintiffs' complaint, namely, that Defendants failed to

1 apprise participants in the Plan of the true nature of the costs they incurred. Should
2 Defendants wish to test the sufficiency of those allegations as they relate to the timeliness of
3 the complaint or the appropriateness of equitable tolling, the proper avenue for doing so is to
4 file a motion to dismiss, rather than to strike such allegations from the complaint.

## CONCLUSION

For the reasons set forth above, the Court is unable to conclude that Plaintiffs will be unable to prove any set of facts to support its claim for breach of fiduciary duty on account of the fees and expenses that Defendants caused Plaintiffs to incur. Accordingly, Defendants' motion to dismiss is DENIED. The Court defers consideration of the application of ERISA's "safe harbor" provision, as well as the various other forms of relief requested by Defendants.

**IT IS SO ORDERED.**

Dated: May 15, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE