1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   BEVERLY KANAWI, et al.,                    No. C 06-05566 CRB

12            Plaintiffs,                       **ORDER RE: SUMMARY JUDGMENT**

13      v.

14   BECHTEL CORP., et al.,

15            Defendants.
     _____/

16

17          Before the Court are three motions for summary judgment in this ERISA class action.

18   Plaintiffs move for partial summary judgment on their claim that the Bechtel Defendants and

19   Fremont Investment Advisors engaged in self-dealing.  The Court denies that motion, as

20   Plaintiffs have failed to demonstrate that, as a matter of law, they are entitled to judgment.

21   The Bechtel Defendants and Fremont Investment Advisors have each moved for summary

22   judgment, arguing that all of Plaintiffs' claims necessary fail.  The Court grants in part and

23   denies in part those motions.  The Court holds that ERISA's six-year statute of limitations

24   applies, thereby barring Plaintiffs' claims that arose before September 11, 2000.  Other

25   portions of Plaintiffs' case are also dismissed, insofar as there is no issue of fact as to

26   whether Defendants' engaged in prohibited transactions or breached their duty of loyalty.

27

28

United States District Court
For the Northern District of California

**FACTUAL BACKGROUND**

The Bechtel Corporation offers a 401(k) retirement plan for its employees.  Third Am. Compl. ¶ 1 (hereinafter "TAC").  The Bechtel Plan is a defined contribution plan in which separate accounts are maintained for each participant.  The retirement benefits each participant receives are based on the amount of contributions to the participant's account and the investment performance of those contributions.  See 29 U.S.C. § 1002(34); TAC ¶ 24.  Plan participants have many investment options and exercise some control over their accounts.  See Knox Decl. ¶ 7, Ex. B at 6-7.

Plaintiffs, a class of Plan participants, brought this suit against (1) the Bechtel Corporation; (2) the Bechtel Trust & Thrift Plan Committee that administers the Plan ("the Committee"); (3) Peggi Knox, the Vice President of Retirement Plans of Bechtel; and (4) Fremont Investment Advisors ("FIA"), the corporation that served as investment advisor and administrative service provider to the Plan from 1986-2004.  TAC ¶¶ 7-12.

I.      The Committee

The Committee, which comprises several Bechtel officers and employees appointed by the company, administers the Plan.  Id. ¶ 10.  All of Bechtel's discretionary authority to administer the plan has been delegated to the Committee since Bechtel became the Plan sponsor.  See Knox Decl. ¶¶ 18-21, Ex. A-D.  The members of the Committee are appointed by Bechtel.  See TAC ¶ 10.  The Committee members have been senior officers and executives of Bechtel.  Since September 11, 2000, no member of the Committee has owned any shares in Fremont Investment Advisors.  See Wollen Decl. ¶¶ 2-3; Lesem Decl. ¶¶ 3-4.

II.     Fremont Investment Advisors

FIA originated from an in-house investment advisory and management division of Bechtel.  See TAC ¶ 12.  Bechtel transferred the employees, assets, and functions of the in-house investment advisory group to a subsidiary corporation named Bechtel Investments Inc.  See Lea Decl. ¶ 8, Ex. 7 at 52:23-54:23.  In 1986, Bechtel Investments Inc. became an

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

1  independent corporation, with Stephen Bechtel Jr. owning a significant portion of the new

2  company.  See id. ¶ 10, Ex. 9 at P02307.

3  In December 1986, Bechtel Investments Inc. incorporated Sierra Asset Management

4  Inc. as a wholly-owned subsidiary corporation.  See id. ¶ 10, Ex. 9.  Shortly thereafter,

5  Fremont Mutual Funds was incorporated and registered as an investment company.  See id. ¶

6  11, Ex. 10.  Fremont Mutual Funds hired Sierra to be the investment advisor for its mutual

7  funds.  Id.  In 1990, Bechtel Investments Inc. changed its name to Fremont Investors Inc.,

8  and Sierra changed its name to Fremont Investment Advisors Inc. ("FIA").  See id. ¶ 12, Ex.

9  11.  Thus, from inception through the date it was sold in 2006, FIA was owned by what had

10  been Bechtel Investments Inc. and is now Fremont Investors Inc.  See id. ¶ 14, Ex. 13 at

11  17:11-19:21.  During the relevant period, Stephen Bechtel Jr. has owned a stake in FIA's

12  parent company.

13  In 1987, Bechtel, through the Committee, executed an Investment Management

14  Agreement with Sierra to manage the investment of Plan assets.  See id. ¶ 15, Ex. 14.  When

15  Sierra changed its name to FIA, the parties executed a similar agreement in 1992.  See id. ¶

16  16, Ex. 15.  Through those agreements, Bechtel hired FIA to be the investment manager for

17  the Plan, with full authority to purchase, sell, or exchange assets in the Plan.  See id. ¶ 15,

18  Ex. 14 at FRE-083884; ¶ 16, Ex. 15 at .002.  When it was formed, FIA's primary client was

19  Bechtel.  See id. ¶ 8, Ex. 7 at 65:22-66:4, 74:6-8; 74:22-75:6.

20  Defendant Bechtel asserts that all of FIA's Plan-level fees were paid by Bechtel, the

21  Plan's sponsor - and not the Plan – from 1993 until November 2003, and then again from

22  February 2004 until July 2004.  See Redo Decl. ¶¶  21, 19, Ex. C; Ahearn Decl. ¶ 5, Ex. B,

23  79:2-82:3; Mehta Dec. ¶¶ 3-6, Ex. A.  The Plan-level fees included hourly fees for

24  investment management services.  See Redo Decl. ¶ 19, Ex. C.  They also included FIA's

25  fees for accounting services and participant education services.  See id.  The Plan only paid

26  some amount of fees to FIA for a four-month period from November 2003 through February

27  2004.  See Knox Decl. ¶ 72, Ex. DDD; Mehta Dec. ¶¶ 4-6, Ex. A.

28

**PROCEDURAL BACKGROUND**

The TAC contains three causes of action.  Count I alleges a breach of fiduciary duty against Defendants under ERISA § 502(a)(2).  Count II seeks injunctive relief under ERISA § 502(a)(3) based on the same course of conduct.  Count III seeks injunctive relief under § 502(a)(3) specifically against FIA.

Plaintiffs' theory of the case has evolved significantly since the filing of the first complaint.  The crux of Plaintiffs' argument now is that Bechtel and FIA's close relationship was a breach of Defendants' fiduciary duties and resulted in imprudent decisionmaking. Plaintiffs allege that, through these decisions, Bechtel and FIA looked to serve their own collective interests rather than promote the interests of the Plan participants. The complaint focuses primarily on an allegation that Defendants breached their fiduciary duties under ERISA by causing plan participants to incur unnecessary and improper fees in connection with the Plan.  See TAC ¶¶ 33-48.  Plaintiffs further allege that Defendants engaged in prohibited transactions with FIA, imprudently selected investment options for the Plan, and concealed the true nature of the fees and expenses incurred by the Plan.  See generally id. ¶¶ 49-84.

On October 10, 2008, the Court issued an order certifying the Plaintiff class.  The Court further struck Plaintiffs' request for a jury trial.  Presently before the Court are (1) Plaintiff's Motion for Partial Summary Judgment; (2) the Bechtel Defendants' Motion for Summary Judgment; and (3) Defendant FIA's Motion for Summary Judgment.

**DISCUSSION**

I.      Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact issue is "material" only if it could affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

1   248 (1986).  A fact issue is genuine if the evidence is such that a reasonable jury could return

2   a verdict for the nonmoving party.  Id.

3          A principal purpose of the summary judgment procedure is to isolate and dispose of

4   factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The

5   party moving for summary judgment has the burden to show initially the absence of a

6   genuine issue concerning any material fact.  See Adickes v. S.H. Kress & Co., 398 U.S. 144,

7   159 (1970).  This can be done by either producing evidence negating an essential element of

8   the plaintiff's claim, or by showing that plaintiff does not have enough evidence of an

9   essential element to carry its ultimate burden at trial.  See Nissan Fire & Marine Ins. Co. v.

10  Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).  Once the moving party has met

11  its initial burden, the burden shifts to the nonmoving party to establish the existence of an

12  element essential to that party's case, and on which that party will bear the burden of proof at

13  trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden,

14  the nonmoving party cannot rely on its pleadings, but instead must have evidence showing

15  that there is a genuine issue for trial.  See id. at 324.

16         Special rules of construction apply to evaluating summary judgment motions: (1) all

17  reasonable doubts as to the existence of genuine issues of material fact should be resolved

18  against the moving party; and (2) all inferences to be drawn from the underlying facts must

19  be viewed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc. v. Pac.

20  Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

21

22  II.    ERISA - Legal Background

23         A.     ERISA § 404 - Duty of Loyalty

24         An ERISA fiduciary must act for the exclusive benefit of plan participants.  29 U.S.C.

25  § 1104(a)(1).  He must exhibit the care, skill, prudence, and diligence that a prudent person

26  acting in like capacity would use in similar circumstances.  Id.  In enforcing these duties, the

27  Court looks at both the merits of a transaction and the thoroughness of the fiduciary's

28  decision making process.  See Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996).

United States District Court
For the Northern District of California

5

Fiduciaries are obligated to discharge their fiduciary duties solely for the interests of plan participants. 29 U.S.C. § 1104(a)(1)(A). A fiduciary's duty requires complete and undivided loyalty to plan participants without any dealing for the fiduciary's own benefit. 29 U.S.C. § 1104(a)(1)(A); see Pegram v. Herdrich, 530 U.S. 211, 224 (2000).

B.   ERISA § 406 - Prohibited Transactions

ERISA § 406 sets forth certain types of transactions between a plan and other parties that are per se prohibited. See 29 U.S.C. § 1106.

Section 406 provides:

(a) Transactions between plan and party in interest – Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

...

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

...

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107(a) of this title.

(b) Transactions between plan and fiduciary – A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

United States District Court
For the Northern District of California

1   29 U.S.C. § 1106.

2       ERISA § 406(a) begins with the premise that virtually all transactions <u>between a plan

3   and a party in interest</u> are prohibited, unless a statutory or administrative exemption applies.

4   A "party in interest" is defined broadly to include  "any fiduciary, a person providing

5   services to the plan, an employer whose employees are covered by the plan, and certain

6   shareholders and relatives."  <u>Chao v. Hall Holding Co., Inc.</u>, 285 F.3d 415, 424 (6th Cir.

7   2002); 29 U.S.C. § 1102(14).  ERISA § 408(b) then provides for a broad array of statutory

8   and administrative exemptions for § 406(a).  Included is an exemption that permits a

9   fiduciary to make "reasonable arrangements with a party in interest" for "services necessary

10  for the establishment or operation of the plan" so long as "no more than reasonable

11  compensation is paid therefor."  29 U.S.C. § 1108(b)(2).

12      ERISA § 406(b) establishes that various transactions involving <u>self-dealing</u> are

13  prohibited.  Section 406(b)(1) in particular prohibits fiduciaries from dealing with plan assets

14  in their <u>own</u> interest or for their <u>own</u> account.   ERISA § 406(b) "creates a per se ERISA

15  violation; even in the absence of bad faith, or in the presence of a fair and reasonable

16  transaction, [ERISA 406(b)] establishes a blanket prohibition of certain acts, easily applied,

17  in order to facilitate Congress' remedial interest in protecting employee benefit plans."

18  <u>Patelco Credit Union v. Sahni</u>, 262 F.3d 897, 911 (9th Cir. 2001) (internal citation omitted).

19  Per se violations of ERISA § 406 are broadly construed to impose liability even where there

20  is "no taint of scandal, no hint of self-dealing, no trace of bad faith."  <u>Lowen v. Tower Asset

21  Mgmt. Inc.</u>, 829 F.2d 1209, 1213 (2d Cir. 1987) (internal quotation marks omitted).  A

22  fiduciary that engages in self-dealing is obligated to disgorge all benefits it obtains from such

23  conduct.  29 U.S.C. §§ 1109(a), 1132(a)(3)(B).

24      ERISA § 408's exemptions do not apply to violations of § 406(b)'s prohibition on

25  self-dealing.  <u>See Patelco</u>, 262 F.3d at 911.  Furthermore, "ERISA clearly contemplates

26  actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries

27  do not suffer direct financial loss."  <u>Leigh v. Engle</u>, 727 F.2d 113, 122 (7th Cir. 1984).  "The

28  nature of the breach of fiduciary duty alleged [under ERISA § 406(b)] is not the loss of plan

assets but instead the risking of the trust's assets at least in part to aid the defendants . . . ." <u>Id.</u> (emphasis omitted).

Although both parts of ERISA § 406 broadly define certain transactions that are prohibited, there is no per se rule under ERISA against fiduciaries having conflicting loyalties.  <u>Friend v. Sanwa Bank California</u>, 35 F.3d 466, 469 (9th Cir. 1994).  Even if dual loyalties is not itself a per se violation of ERISA, a fiduciary with such a conflict must still adhere to his general duty of loyalty, as described in § 404.  A party may be found to have breached his duty of loyalty by acting imprudently towards the plan participants, even if he did not commit a per se prohibited transaction under ERISA.  <u>See Leigh</u>, 727 F.2d at 126 (reading prohibition in § 406 "as a gloss on the duty of loyalty required" by § 404).

Finally, a fiduciary is jointly and severally liable for a breach of duty by another fiduciary if it participates knowingly in the breach, if it enabled the other to commit the breach, or if it knows of the other's breach and fails to take reasonable efforts to remedy the breach.  29 U.S.C. § 1105(a).

C.    Scope of Fiduciary Duty

"Suits for breach of ERISA fiduciary duty . . . may be brought only against persons definable as fiduciaries under ERISA.  A non-fiduciary does not subject itself to liability simply by participating in a breach of trust by fiduciaries."  <u>Batchelor v. Oak Hill Med. Group</u>, 870 F.2d 1446, 1448 (9th Cir. 1989).

ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  In general, an ERISA plan sponsor does not act as a fiduciary in determining to establish, amend, or terminate the plan, but rather acts in a role analogous to the settlor of a trust.  <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882 (1996); <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73 (1995).

United States District Court
For the Northern District of California

8

United States District Court
For the Northern District of California

Whether a party is a fiduciary under ERISA is not an inquiry into the powers formally assigned to a particular party, but rather a more pragmatic inquiry into the powers actually exercised by that party and the amount of discretion involved in the exercise of such powers. See generally James Lockhart, When Is Employer, Labor Union, Affiliated Entity or Person, or Pension or Welfare Plan "Fiduciary" Within Meaning of § 3(21)(A)(i) or (iii) of Employee Retirement Income Security Act of 1974 (29 U.S.C.A. § 1002(21)(A)(i) or (iii)), 178 A.L.R. Fed. 129 (2002); Dep't of Labor, Questions and Answers Relating to Fiduciary Responsibility Under the Employee Retirement Income Security Act of 1974, 29 C.F.R. § 2509.75-8 (1976).

### 1.   The Bechtel Corporation

Defendant Bechtel admits that it serves as a Plan fiduciary, but it disputes the scope of its fiduciary duty.  Bechtel contends that it delegated its responsibility for Plan administration to the Committee.  Bechtel's responsibility was to appoint and monitor Committee members. Bechtel asserts that it did not retain any discretion or fiduciary responsibility for Plan administration or investment management, so it cannot be held liable for any imprudent decisions made in relationship to management of the Plan.

The Plan states:  "All determinations of the Committee as to . . . any discretionary items to be taken under the Plan, shall be solely at the discretion of the Committee and shall be final, conclusive and binding on all persons claiming to have any right or interest in or under the Plan."  Knox Decl. ¶ 18, Ex. A, § 6.02.

Plaintiffs' suit does not challenge Bechtel's performance of its limited fiduciary duties.  Fiduciaries can be held liable only for claims arising out of the exercise of their limited fiduciary duties.  See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985).  Plaintiffs have not submitted evidence showing that Bechtel placed people on the Committee who would serve the corporation's own interests.  Furthermore, the evidence does not suggest that Bechtel itself exercised power over the investment decisions relating to the Plan.  As a result, Bechtel's liability is limited to joint liability for the breaches of any co-fiduciaries under § 1105(a).  Under that section, Bechtel is liable for any breach by the

United States District Court
For the Northern District of California

Committee or FIA if Bechtel (1) knowingly participated or knowingly concealed an act or omission of the Committee or FIA that Bechtel knew was a breach of fiduciary duty; (2) failed to act for the exclusive benefit of Plan participants in appointing Committee members; or (3) knew of breaches by co-fiduciaries and made no reasonable efforts to remedy the breach.  See 29 U.S.C. § 1105(a).

### 2.   The Committee

The Committee was clearly responsible, in part, for the investment decisions made by the Plan.  See Knox Decl. ¶ 18, Ex. A § 6.02.  Accordingly, if there is a breach, it fell within the scope of the Committee's fiduciary duties.

### 3.   FIA

FIA contends it is only a limited fiduciary, and not liable for the allegedly imprudent structure or investments of the Plan.  However, FIA exercised discretionary authority and control over management of the Plan and its assets.  The Committee was designated the named fiduciary with authority to manage the Plan, but it exercised that authority in concert with FIA.  FIA cannot hide behind the Committee's oversight to shield itself from possible liability for its own actions in relation to the Plan's management.  Accordingly, FIA was a fiduciary as to the acts at issue in this suit.

### D.   Statute of Limitations

ERISA imposes a statute of limitations on claims alleging a breach of fiduciary duty. Section 413 provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of-
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;  except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

United States District Court
For the Northern District of California

1    ERISA's statute of limitations applies here to narrow the Court's inquiry to events that

2    took place on or after September 11, 2000.  Section 413(1) bars claims for breach of

3    fiduciary duty if a party does not file an action within six years of the date of the alleged

4    violation, regardless of when the participant actually learns of the breach.  29 U.S.C. §

5    1113(1).  If a party has actual knowledge of a breach, then it has three years to bring its

6    claim, unless it can toll the period by showing fraud or concealment.  29 U.S.C. § 1113(2).

7    There is no "continuing violation" theory to claims subject to ERISA's limitation period.

8    See Phillips v. Alaska Hotel & Rest. Employees Pension Fund, 944 F.2d 509, 520 (9th Cir.

9    1991).

10    Plaintiffs brought this case on September 11, 2006, so the Bechtel Defendants contend

11    that Plaintiffs cannot maintain a claim for any breach of fiduciary duty that arose before

12    September 11, 2000.  Plaintiffs argue that the statute of limitations should be tolled due to

13    Defendants' acts of fraud or concealment.  In particular, Plaintiffs allege that Defendants

14    concealed the existence of a relationship between Bechtel's owners and officers and FIA.

15    Plaintiffs further contend that Defendants misrepresented the performance of certain funds in

16    a way that deceived Plan participants.

17    The tolling provision applies to cases in which a plaintiff can prove that a defendant

18    "made knowingly false misrepresentations with the intent to defraud the plaintiffs," or took

19    "affirmative steps" to conceal its own alleged breaches.  Barker v. Am. Mobil Power Corp.,

20    64 F.3d 1397, 1401 (9th Cir. 1995) (per curiam).  Plaintiffs must show that Defendants

21    engaged in affirmative acts intended to conceal a breach of fiduciary duty separate from the

22    breach of duty itself.  See id. at 1402.  The failure of a fiduciary to disclose self-interest in

23    transactions that were allegedly harmful to a plan "does not rise to the level of active

24    concealment, which is more than merely a failure to disclose."  Schaefer v. Arkansas Med.

25    Soc., 853 F.2d 1487, 1491 (8th Cir. 1988).

26    The evidence may suggest that Bechtel did not apprise the Plan participants of the full

27    extent of Bechtel's interest in FIA.  See, e.g., Lea Decl., Ex. 21, 146: 13-25.  But Plaintiffs

28    have failed to produce evidence to support a finding that Defendants took affirmative steps to

conceal a breach of fiduciary duty or made knowing misrepresentations with the intent to defraud Plan participants. For example, Plaintiffs point to a one-page printout from the FIA website that, in one of four paragraphs, refers to FIA as a "Bechtel-related investment advisory firm." See Lea. Decl., Ex. 94. The text has been stricken out, with the word "delete" hand-written at the top of the page. See id. This page was printed out on March 2, 2001, but it indicates it was "[f]irst published July, 1998." See id. This evidence fails to show any active concealment, particularly given the inference that the language disclosing the relationship did appear on the FIA website from July 1998 through March 2001. Plaintiffs' other evidence similarly fails to rise to the level of "active concealment" that is required to toll the statute of limitations, pursuant to Barker.

Plaintiffs' other allegations of purported fraudulent conduct include the concealment of excessive fees, misrepresentations of risk, failure to use proper benchmarks for some funds, and misstatements about ERISA's safe harbor defense. Plaintiffs' arguments as to fraud, however, are bound up in their assertion that Defendants breached their fiduciary duties – the record does not separately support a finding that Defendants took active steps to conceal any alleged breaches. See Barker, 64 F.3d at 1401 ("While these facts may allege a mismanagement of Plan funds and therefore a breach of fiduciary duty, they do not establish fraud.").

Plaintiffs have not produced evidence demonstrating that Defendants engaged in fraud or affirmative conduct to hide any alleged breaches. Accordingly, ERISA's fraud or concealment provision does not toll the running of the limitations period on Plaintiffs' claims for breach of fiduciary duty that arose before September 11, 2000. The Court therefore narrows its inquiry to actions that took place on or after September 11, 2000.[1]

---

[1]FIA contends that a three-year limitations period should apply under § 1113(2) because Plaintiffs had actual knowledge of the breach as of September 2003, and were then required to bring an action within three years of that date. The three year period of limitations is triggered by a party's "knowledge of the transaction that constituted the alleged violation . . . ." Blanton v. Anzalone, 760 F.2d 889, 992 (9th Cir. 1985). The evidence is not clear that Plaintiffs had actual knowledge of the transactions they contest here. The Court cannot, as a matter of law, say the three year statute of limitations should apply.

III.     Plaintiffs' Allegations of Imprudent Conduct

Plaintiffs allege that Defendants breached their fiduciary duties to the Plan in a variety of ways, discussed in turn below.

A.     Retention of FIA

The crux of Plaintiffs' claim is that the Committee breached its fiduciary duty by retaining FIA as investment manager and administrative services provider to the Plan. Plaintiffs argue that this both violated Defendants' general duty of loyalty, and  was a conflicted transaction prohibited by ERISA § 406.  Because the statute of limitations precludes consideration of claims arising before September 11, 2000, the Court need only determine whether Defendants breached their duty by retaining FIA after that date.

Plaintiffs suggest that FIA's interests were closely aligned with Bechtel's upper management, and that FIA was not an independent entity with an eye towards protecting Plan participants.  A number of people who had an ownership interest in FIA were also involved with the Committee at some point.  However, during the relevant period for this case – after September 11, 2000 – none of the Committee members had a stake in FIA.  Plaintiffs further allege that when the Committee considered limiting its ties with FIA, FIA officers used their relationships with the Committee to protect FIA's position as manager of the Plan.  See Lea Decl. ¶ 30, Ex. 28; ¶ 31, Ex. 29; ¶ 32, Ex. 30.

 Ultimately, Plaintiffs' argument that the Defendants engaged in a prohibited transaction under § 406 largely fails because FIA's fees were not paid using  "assets of the plan."  See 29 U.S.C. § 406(b)(1).  FIA's fees were paid directly by the Plan sponsor, Bechtel, from 1993 until October 2003.  See Ahearn Decl. ¶ 5, Ex. B; Mehta Decl. ¶ 3; Lea Decl., Ex. 20 ("Other costs paid directly by Bechtel . . . include investment advice and management, education, and accounting").  To the extent Plan assets were not used to pay FIA's fees, there was neither a transaction with a "party in interest" that would be prohibited by ERISA § 406(a) nor a self-dealing transaction that would be prohibited by § 406(b).  Moreover, Department of Labor regulations specifically permit FIA's provision of services

**United States District Court**
For the Northern District of California

1  to the Plan so long as it is not compensated from Plan assets.  <u>See</u> 29 C.F.R. § 2550.408b-

2  2(e)(3).

3          From November 2003 to February 2004, Bechtel admits that the Plan did pay FIA's

4  service fees.  <u>See</u> Mehta Decl. ¶¶ 3-5.  Beginning in March 2004, Bechtel resumed paying all

5  of FIA's Plan level fees.  <u>Id.</u> ¶ 5.  Whether these fees were proper is not an issue that the

6  Court can determine on summary judgment.  There is a genuine issue of fact as to whether

7  the fees paid by the Plan during this span constituted a prohibited transaction.

8          First of all, the evidence does not clearly establish whether retaining FIA was a

9  prohibited transaction with a "party in interest" under § 406(a).  Defendants assert that the

10  payment of FIA's fees was not a violation under § 406(a) because it qualifies for §

11  408(b)(2)'s exemption for reasonable fees for necessary services.  <u>See Patelco Credit Union</u>

12  <u>v. Sahni</u>, 262 F.3d 897, 910 (9th Cir. 2001) (recognizing that the reasonable compensation

13  exception applies to transactions with parties in interest under § 406(a), but not to self-

14  dealing transactions under § 406(b)).  Defendants have offered only conclusory allegations to

15  this effect.  The Court cannot say, as a matter of law, that the fees were reasonable so that the

16  exemption applies.

17          In addition, it is not clear that receipt of fees from the Plan's assets does not constitute

18  a prohibited self-dealing transaction under § 406(b).  Defendants focus on the language in §

19  406(b)(1), which states a fiduciary shall not "deal with the assets of the plan in his own

20  interest or for his own account."  29 U.S.C. § 1106(b)(1).  Defendants are correct in positing

21  that the payment of fees during this four month period could not constitute self-dealing under

22  § 406(b) because the fiduciaries who retained FIA's services (members of the Committee)

23  did not stand to benefit personally from the transaction.  <u>Cf. Patelco</u>, 262 F.3d at 901-03,

24  909-10 (fiduciary commingled plan funds with those of his own company, set his own fees,

25  and deposited checks into his own account); <u>Leigh</u>, 727 F.2d at 132 (holding defendants

26  engaged in self-dealing by using plan assets in corporate control contest in which they had an

27  independent interest).  None of the members of the Committee during the relevant period

28  owned a stake in FIA.  <u>See</u> Wollen Decl. ¶¶ 2-3; Lesem Decl. ¶¶ 2-3.  Plaintiffs have not

**United States District Court**
For the Northern District of California

1   presented any evidence showing that any Committee member who was responsible for FIA's

2   retention had an interest that would have affected his best judgment as a fiduciary.  Without

3   any showing that the Committee members acted to benefit themselves, Plaintiffs may not rely

4   on an attenuated "hypothesis" that the Committee was motivated by a relationship between

5   Bechtel and FIA in retaining FIA's services to support a claim of per se self-dealing against

6   the Bechtel Defendants.  See, e.g., Brock v. Citizens Bank of Clovis, 841 F.2d 344, 347 (10th

7   Cir. 1988).

8          However, Defendants fail to explain why § 406(b)(3) should not apply.  That

9   subsection states that a fiduciary shall not "receive any consideration for his own personal

10   account from any party dealing with such plan in connection with a transaction involving the

11   assets of the plan."  29 U.S.C. § 1106(b)(3).  Viewing the evidence in the light most

12   favorable to Plaintiffs, a reasonable fact-finder could conclude that FIA received

13   consideration (fees), from a party dealing with the Plan (the Committee), in connection with

14   a transaction (the service contracts) involving assets of the Plan.  Denying summary

15   judgment on this ground is supported by the recent decision of Haddock v. Nationwide

16   Financial Services Inc., 419 F. Supp. 2d 156 (D. Conn. 2006).  There, the district court

17   denied summary judgment where there was a genuine issue of fact as to whether retaining a

18   service provider constituted a prohibited transaction under § 406(b)(3).  Id. 171-72.

19          In sum, summary judgment is granted to Defendants on Plaintiffs' prohibited

20   transaction claim, to the extent FIA's fees were paid by Bechtel.  Plaintiffs' claim survives

21   for the short period that the Plan did pay FIA's fees, insofar as (1) there may have been a

22   prohibited transaction under § 406(a), because it is not clear at this stage whether FIA's fees

23   were reasonable; and (2) FIA may have engaged in prohibited self-dealing under § 406(b)(3).

24          B.      Defendants' Payment of Fees to Fremont Mutual Funds

25          Plaintiffs theorize that Defendants paid excessive fees by investing in Fremont Mutual

26   Funds.  They allege that Defendants' decision to invest in these funds was in the interests of

27   entities who had close connections with the Bechtel family, rather than in the best interests of

28   the Plan participants.

United States District Court
For the Northern District of California

Fremont Investors Inc. created its first mutual funds in November 1988.  Plaintiffs allege that Defendants should be held liable for specific investment decisions made by the Committee and FIA to invest Plan assets in Fremont's own mutual funds.  In particular, Plaintiffs contest (1) the inclusion Fremont Global Fund as a portion of Fund A; (2) the adoption of the Fremont Bund Fund, managed by PIMCO, for Fund B; (3) the selection of the Fremont Money Market Fund as the manager of Fund C; and (4) the use of the Fremont Institutional U.S. Micro-Cap Fund.  Under Plaintiffs' theory, these decisions constituted prohibited transactions because people close to the Bechtel family stood to benefit from inclusion of Plan assets in mutual funds it managed.

Plaintiffs' claims alleging prohibited transactions on the fees associated with these decisions fail because much of the conduct complained about occurred before the relevant statutory period.  The Fremont Global Fund was added as a portion of Fund A in 1994.  <u>See</u> Knox Decl. ¶ 83, Ex. NNN.  Changes to Fund B and Fund C were also made in 1994.  <u>See</u> Knox. Decl. ¶ 32, Ex. P.; ¶ 82, Ex. NNN.  The Committee approved the use of Fremont's Micro-Cap Fund and retained Robert Kern as its manager in 1997.  <u>See</u> Knox Decl. ¶ 33, Ex. Q.  The transactions that are at issue here happened before September 11, 2000, and thus the Court need not examine the applicability of PTCE 77-4 to exempt these transactions from the prohibitions in ERISA § 406.

Regardless of whether Defendants' inclusion of these mutual funds was a prohibited transaction, the Court must engage in a separate inquiry under § 404(a) as to whether Defendants breached their general duty of loyalty in maintaining these funds after September 2001.  A party may be found to have breached his duty of loyalty by acting imprudently towards the Plan participants, even if he did not commit a per se prohibited transaction under ERISA.  <u>See Leigh</u>, 727 F.2d at 126 (reading prohibitions in § 406 "as a gloss on the duty of loyalty required" by § 404).

A decision to pay the mutual fund management fees must be guided by a consideration of what would be in the best interests of the Plan participants and beneficiaries, and the process used to make that decision must be prudent.  <u>See</u> 29 U.S.C. § 1104(a).

United States District Court
For the Northern District of California

1   Plaintiffs allege that Defendants violated their duty of loyalty by paying unnecessary layers

2   of fees in regard to the Fremont Mutual Funds.  Plaintiffs have not demonstrated that the

3   payment of these fees was imprudent.  As Bechtel, and not the Plan, paid the vast majority of

4   FIA's Plan-level fees, Plaintiffs have failed to show that the Plan was paying "unnecessary

5   layers" of management fees.  The evidence does not support a determination that the fees

6   paid by the Plan were patently unreasonable, or that Defendants abrogated their duties in

7   reviewing the Plan's performance.  The record shows that the Committee met regularly to

8   discuss the Plan's investments and sought the advice of Callan Associates to ensure that it

9   was making proper decisions.  See Kissman Decl. ¶ 79, Ex. A.  Examining the evidence in

10  the light most favorable to the Plaintiffs, the Court finds that Defendants acted prudently and

11  within their sound business judgment in maintaining the funds at issue.

12          C.      Imprudent Investment Options

13          Plaintiffs further allege that Defendants violated their fiduciary duty by maintaining

14  imprudent investment options for the Plan participants.  Although the evidence does show

15  that some funds, in particular Fund A, may have underperformed, this does not render the

16  Defendants' liable for their structuring of the Plan.  The Plan offered six different investment

17  options at various levels of risk.  See Kissman Decl. ¶ 50, Ex. A; Knox Decl. ¶ 10.  The

18  Plan's structure was customary for this type of defined contribution plan.  See Kissman Decl.

19  ¶ 63, Ex. A.  Again, the evidence shows that Defendants regularly reviewed the performance

20  of the Plan's investments and considered alternatives.  Substantively, the overall performance

21  of the Fremont Mutual Funds was competitive with the industry standard.  See id. Ex. H.  Of

22  course, the test of prudence is one of conduct and not performance, Plaintiffs have not

23  demonstrated that Defendants' conduct fell outside of their obligations to the Plan

24  participants.  It is easy to opine in retrospect that the Plan's managers should have made

25  different decisions, but such 20/20 hindsight musings are not sufficient to maintain a cause of

26  action alleging a breach of fiduciary duty.

27

28

United States District Court
For the Northern District of California

D.      FIA's Managed Account Services Program

FIA began the Managed Account Services Program ("MAS") in 2000.  Bechtel allowed FIA to include a solicitation for the program in one mailing to Plan participants. FIA sought individuals who would use its investment services outside of the Plan, and who would roll over their assets after retirement to FIA accounts.  In pursuing its new business line, FIA touted its "long and successful relationship with Bechtel."  See Lea Dec. ¶ 50, Ex. 48.  Plaintiffs argue that FIA breached its fiduciary duties by using its position within Bechtel to develop MAS.  As of February 2002, FIA had obtained $4.5 million in assets under management from this program.  See Lea Decl. ¶ 52, Ex. 50.

Plaintiffs have not shown that Defendants breached their fiduciary duties by permitting FIA to include a flyer regarding the MAS program in one of its mailing.  Nothing in ERISA precludes a fiduciary from offering to provide plan participants an additional service for an additional fee.  The MAS program was created for retirees to invest non-Plan assets, and it does not cast a shadow on Defendants' commitment to the Plan and its participants.  Plaintiffs have not shown how offering the program used Plan assets or harmed the Plan in a way that is actionable under ERISA.  Accordingly, Plaintiffs' claim for breach of fiduciary duty related to the MAS Program fails as a matter of law.

E.      Sale of FIA

In 2001, Fremont Investors Inc. decided to sell FIA.  See Lea Decl. ¶ 43, Ex. 41 at 115:18-19; ¶ 8, Ex. 7 at 132:4-16.  Since the time it was incorporated in 1986, FIA's value grew significantly due to its relationship with Bechtel and its management of the Plan.  See id. ¶ 10, Ex. 9 at P02334.  As of 2002, the Plan provided FIA $4.2 million in annual direct fee revenue, including fees from the mutual funds in which Plan participants invested.  See id. ¶ 64, Ex. 62.

FIA agreed to keep Bechtel informed of its sale process with periodic status reports and to provide Bechtel the opportunity to meet with prospective buyers.  See id. ¶ 2, Ex. 1 at 233:17-234:6.  At the same time Fremont Investors Inc. was searching for a prospective buyer, Bechtel reduced FIA's investment role but agreed that FIA would continue to manage

18

United States District Court
For the Northern District of California

Fund C.  The agreement for purchase of FIA's business based a portion of the price on the fees the new owners would earn on assets under management for the

 following year.  Fund C's investment in the Fremont Money Market Fund was 53% of the total investment in the fund.  Fund C was a major revenue generator, producing about $1.3 million in fees per year.  See id. ¶ 72, Ex. 70.

In June 2004, under the recommendation of Callan Associates, the Committee terminated the investment management agreement with FIA.  See id. ¶ 73, Ex. 71.  The Committee kept the Plan's Fund C assets in the Fremont Money Market Fund for an additional year.  See id. ¶ 73, Ex. 71.  Plaintiffs allege that the revenue earned by FIA's new owners would have been significantly affected if the Committee had pulled Fund C out of the Fremont fund.  See id. ¶ 70, Ex. 68.  They further contend that the Committee preserved Fund C in order to protect the sale of FIA's business, rather than to promote the interests of the Plan participants.  See id.; ¶ 74, Ex. 72 at 2; ¶ 69, Ex. 67.  The amount of money received from the sale of FIA has not been disclosed.

The Bechtel Defendants argue that if they really had wanted to boost FIA's sale price, they would not have decided to replace FIA as the administrative services provider before it was sold.  The Committee restructured the Plan over a period of time so as to avoid disrupting the Plan's operations and to ensure that the process proceeded carefully.  See Laspa Decl. ¶ 8.  Effective October 1, 2003, the Committee terminated Funds A and E and replaced them with new investment managers.  See Knox Decl. ¶ 39, Ex. W.  The Committee also eliminated FIA's administrative duties, curtailed its investment management duties, and retained only Fund C, which consistently performed well.  See Knox Decl. ¶ 48, Ex. FF.  In October 2003, Bechtel's internal staff assumed the day-to-day administrative responsibilities for the Plan.  See Knox Decl. ¶¶ 13, 54, Ex. LL.

Ultimately, any claim based on the sale of FIA must fail.  Plaintiffs cite no authority for the proposition that the Plan is entitled to the proceeds of the FIA asset sale simply because the Plan was one of FIA's first and largest clients.  There is no evidence to support Plaintiffs' claim that Defendants somehow breached their fiduciary duties by either retaining

19

an interest in Fund C after FIA's sale or receiving updates on FIA's potential buyers. It is entirely reasonable that the Committee would want to stay apprised of the potential buyers for FIA because it would affect its decisionmaking process regarding whether to restructure the Plan. Furthermore, Defendants acted prudently in deciding to retain Fund C because it had performed well for the Plan.

### F.    ERISA § 404(c)'s "Safe Harbor" Defense

Defendants argue that they are shielded from any liability under ERISA § 404(c)'s "safe harbor" defense. That section provides that a fiduciary shall not be liable for any loss that results from a participant's exercise of control over the assets in his account. See 29 U.S.C. § 1104(c)(1)(A). Under this affirmative defense, a Plan is immune from claims for losses when the Plan (1) is an individual account plan; (2) provided participants the opportunity to exercise control over the assets in their accounts; and (3) provided participants the opportunity to choose from a broad range of investment alternatives. See id.

The parties go back and forth over whether participants did have the opportunity to exercise control over the assets in their accounts. ERISA regulations contain a host of requirements that must be met before a defendant fiduciary may seek the "safe harbor" of § 404(c). See 29 C.F.R. § 2550-404c-1. Because there appear to be genuine disputes about whether the Plan was a 404(c)-qualified Plan, this issue is inappropriate for summary judgment. The Court declines to hold, at this point, that Defendants are absolved from all liability on § 404(c) grounds.

However, even if § 404(c) applied, it would not absolve Defendants from their own breaches of fiduciary duties that occurred before any participant exercised control over the investment of his account. The DOL has taken a clear position that § 404(c) does not shield a party from liability for claims of imprudent selection of Plan investment options. This position comports with commonsense. Where the options available to participants are tainted by conflicts of interest or imprudent management, a party should not be able to avoid liability simply by providing participants the opportunity to exercise control over their accounts. The DOL has emphasized that a fiduciary has a continuing duty to monitor the prudence of

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   investment options in a plan regardless of the scope of a participant's control.  See 57 Fed.

2   Reg. 46,906, 46,924 n.27 (Oct. 13, 1992).

3

4   IV.   Plaintiffs' Motion for Partial Summary Judgment

5       Plaintiffs move for partial summary judgment against Bechtel, the Committee, and

6   FIA,[2] on four claims: (1) hiring FIA as the Plan's investment manager and administrative

7   services provider; (2) investing in Fremont Mutual Funds; (3) tinkering with the sale of FIA;

8   and (4) soliciting Plan participants through FIA's Managed Account Services Program.

9   Plaintiffs request that Bechtel and FIA are held jointly and severally liable for disgorgement

10  of funds received by FIA as a result of Defendants' imprudent conduct.

11      Insofar as Plaintiffs' motion covers the ground addressed in Defendants' motions, the

12  analysis is the same.  ERISA's statute of limitations bars any claims arising before

13  September 11, 2000.  This finding essentially eliminates Plaintiffs' contention that

14  Defendants are liable for hiring FIA and investing in FIA mutual funds.  Pursuant to the

15  discussion above, Plaintiffs' contention that Defendants erred by retaining Fund C after

16  otherwise terminating its relationship with FIA when FIA was sold is also unsupported.

17  Plaintiffs have failed to demonstrate that Defendants breached their fiduciary duties by

18  retaining investments in a fund that had performed well for the Plan.  Furthermore, Plaintiffs

19  have not shown a breach of fiduciary duties related to FIA's MAS Program.  Accordingly,

20  Plaintiffs' motion for partial summary judgment is denied.

21

22  V.    Defendant Peggi Knox

23      The claims posited by Plaintiffs have evolved over time, and there are some

24  allegations in their Third Amended Complaint that they no longer seem to be pursuing.

25  Plaintiffs have offered no argument to support claims based on the liability of Defendant

26  Peggi Knox.  Accordingly, summary judgment is entered against Plaintiffs as to any claim

27  against Ms. Knox.

28
    _____
        [2]Plaintiffs did not include its claims against Defendant Peggi Knox in its motion.

                                        21

United States District Court
For the Northern District of California

VI.    Rule 56(f) Motion

Plaintiffs' pleadings in opposition to Defendants' motions for summary judgment request that the Court delay its ruling because discovery was not complete before the parties filed their summary judgment motions.  In particular, Plaintiffs seek information about the ownership of Bechtel and FIA's parent corporation.  The Court is unpersuaded that such information would affect its review of the issues briefed by the parties, so any motion based on Rule 56(f) is hereby denied.

**CONCLUSION**

Based on the foregoing, the Court holds that six-year statute of limitations applies, thereby barring Plaintiffs' claims arising before September 11, 2000.  The Court DENIES Plaintiffs' Motion for Partial Summary Judgment.  The Court GRANTS in part and DENIES in part Defendants' Motions for Summary Judgment.  Insofar as Plan assets were <u>not</u> used to pay FIA's fees, retention of FIA was <u>not</u> a prohibited transaction under ERISA § 406.  Plaintiffs' claim under § 406 survives to the extent Plan assets were used to pay FIA's fees for four months during November 2003 until February 2004.  Plaintiffs' claims based on mutual fund management fees, imprudent decisionmaking, FIA's Managed Account Services Program, the sale of FIA, and the liability of Defendant Peggi Knox are dismissed because they are unsubstantiated, as a matter of law.  Finally, judgment based on ERISA's § 404(c) "safe harbor defense" is denied.

**IT IS SO ORDERED.**


Dated:      November 3, 2008                                    _____
                                                               CHARLES  R. BREYER
                                                               UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28