SCHLICHTER, BOGARD & DENTON
JEROME J. SCHLICHTER (054513)
HEATHER LEA *(Admitted Pro Hac Vice)*
MARK G. BOYKO *(Admitted Pro Hac Vice)*
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone:  (314) 621-6115
Facsimile:  (314) 621-7151
jschlichter@uselaws.com
hlea@uselaws.com
mboyko@uselaws.com

*Attorneys for Plaintiffs and Class Representatives*

FUTTERMAN & DUPREE LLP
JAMIE L. DUPREE (158105)
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone:  (415) 399-3840
Facsimile:  (415) 399-3838
jdupree@dfdlaw.com

*Local Attorneys for Plaintiffs and Class Representatives*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BEVERLY KANAWI and SALVADOR AQUINO, as representatives of a class of similarly situated person, and on behalf of the Plan,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>BECHTEL CORPORATION, THE BECHTEL TRUST AND THRIFT PLAN COMMITTEE, PEGGI KNOX, and FREMONT INVESTMENT ADVISORS,<br><br>   *Defendants*. | Case No. C 06-05566 CRB (EDL)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:  February 18, 2011<br>TIME: 10:00 a.m.<br><br>Hon. Charles R. Breyer |

SCHLICHTER
BOGARD & DENTON

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

TO:  Defendants and their attorneys of record:

PLEASE TAKE NOTICE that on February 18, 2011 at 10:00 a.m., in the Courtroom of the Honorable Charles R Breyer located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move for an award of attorneys' fees and expenses.  This Motion is based upon the Memorandum of Points and Authorities in support of the Motion for an award of attorneys' fees and expenses, the Final Settlement Agreement, the declarations submitted, and all other pleadings and matters of record.

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORTIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. THE COMPLEX HISTORY OF 401(K) FEE LITIGATION AND SETTLEMENT OF
    *KANAWI V. BECHTEL*..........................................................................................3

III. THIS IS AN EXCEPTIONAL SITUATION, AND ATTORNEYS' FEES OF 13.3% OF
     THE LOWEST ESTIMATED VALUE OF THE SETTLEMENT IS CONSERVATIVE....6

    A.  Exceptional Results Achieved ......................................................................7

    B.  Enormous Risk to Class Counsel................................................................11

    C.  Extraordinary Affirmative Relief ...............................................................12

        1.  The Substantial Affirmative Relief is Highly Valuable to the Class .................. 12

        2.  Estimated Value of Non-Monetary Relief ........................................... 13

    D.  The Market Rate Demonstrates Class Counsel's Requested Award is Low. .............14

        1.  Class Counsel's Reasonable Expectation was that the Market for Attorneys'
        Fees in this Litigation is a Contingency Fee Based on a One-Third Percentage
        of the Total Recovery to the Class. ........................................................ 14

        2.  Class Counsel's Request is Consistent with the Market for its Services............. 15

        3.  Information from Other Cases ............................................................... 16

    E.  Class Counsel Expended an Enormous Amount of Resources....................................17

IV. A LODESTAR CROSS-CHECK FURTHER BOLSTERS AN AWARD OF $6.1
    MILLION........................................................................................................17

V.  APPROVAL OF COSTS....................................................................................18

VI. NAMED PLAINTIFF AWARDS........................................................................20

VII. CONCLUSION..................................................................................................21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Beesley v. Int'l Paper, Co*., 2008 WL 4450319 (S.D. Ill. 2008)...................................... 9

4

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) ............................................................. 12

5

*Boeing Co. v. VanGemert*, 444 U.S. 472 (1980)......................................................... 2

6

*Cullen v. Whitman Med. Corp*., 197 F.R.D. 136 (E.D. Pa. 2000)................................ 17

7

*George v. Kraft Foods Global Inc*., 251 F.R.D. 338 (N.D. Ill. 2008) ........................... 9

8

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ....................................................... 19

9

*Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009) .................................................... 16, 20

10

*In re Ampicillin Antitrust Litig*., 526 F. Supp. 494 (D.D.C. 1981) .............................. 17

11

*In re Conn. Gen. Life Ins. Co.*, 1997 WL 910387 (C.D.Cal. 1997)............................... 21

12

*In re Marsh ERISA Litig*., No. 04-8157, 2010 WL 451028 (S.D.N.Y. Jan 29, 2010)................. 17

13

*In re Medtronic Inc. Implantable Defibrillator Prod. Liab. Litig*., 2008 WL 4861694 (D. Minn. Oct. 20, 2008) ........................................................................................... 17

14

*In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985) ............................................ 19

15

*In re Oracle Sec. Litig*., 131 F.R.D. 688 (N.D.Cal. 1990) ........................................... 7

16

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995) ............... 12

17

*In re THC Financial Corp. Litig.*, 86 F.R.D. 721 (D.C.Hawaii 1980) ......................... 19

18

*In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291 (9th Cir. 1994)..................... 7, 11

19

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)................................... 18

20

*Loomis v. Exelon Corp*., 2007 WL 2981951 (N.D. Ill. June 26, 2007) ......................... 9

21

*Marcet, LLC v. Johnson & Johnson*, 2010 WL 680490 (S.D.Ill. 2010) ........................ 20

22

*Martin v. Caterpillar Inc*., 2010 WL 3210448 (Aug. 12, 2010)........................... 9, 10, 19

23

*Martin v. Caterpillar*, Ct. Doc. 197, No. 07-cv-1009 (C.D.Ill. Sept. 10, 2010) ................... passim

24

*Martin v. Survivair Respirators, Inc*., No. 22042-0883 (22d Cir. Mo.) ....................... 11

25

*Middle Mountain Land & Produce Inc.*, 307 F.3d 1220 (9th Cir. 2002)........................ 2

26

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ................................................. 2, 19

27

*Mister v. Illinois Central Gulf Railroad*, No. 81-3006 (S.D. Ill. 1993)........................ 10

28

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

*Nobles v. MBNA Corp.*, 2009 WL 1854965,  (N.D.  Cal. 2009) ........................................ 7, 11, 19

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ....................................... 7

*Perry v. Nat'l City Bank*, No. 05-CV-891- DRH-PMF (S.D. Ill. Mar. 3, 2008).......................... 17

*Smith v. Dominion Bridge Corp*., No. 96-7580, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) .... 17

*Spano v. Boeing*, 2008 WL 4449516 (S.D. Ill. 2008) ...................................................................... 9

*Stalcup v. Schlage Lock Co*., 505 F.Supp.2d 704 (D.Colo. 2007) ............................................... 20

*Taylor v. United Tech. Corp*., 2008 WL 2333120 (D. Conn. June 3, 2008) ................................ 9

*Trustees v. Greenough*, 105 U.S. 527 (1882) ............................................................................... 18

*Tussey v. ABB Inc*., 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ............................................ 4, 9

*Van Vranken v. Atlantic Richfield Co.,* 901 F.Sup.. 294 (N.D.Cal. 1995).................................... 20

*Velez v. Novaris Pharmaceuticals Corp*., 2010 WL 4877852 (S.D.N.Y. 2010) .......................... 20

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................................. passim

*Wilfong v. Rent-A-Center*, Case No. 00-680-DRH (S.D. Ill. 2002)............................................. 10

*Will v. General Dynamics Corp.*, 2010 WL 4818174, at *2 (S.D.Ill. Nov. 22, 2010)........... passim

**Other Authorities**

"*Employers on the hook for 401(k) Fees*," PHILADELPHIA BUSINESS JOURNAL, Sept. 3, 2010....... 4

John J. Coffee, Jr.,*Rescuing the Private Attorney General: Why the Model of the Lawyers as Bounty Hunter is Not Working*, 42 MD. L. REV. 215, 216, 225-26 (1983) ................................. 8

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71, at 337 (2004) ......................................... 12

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION, § 3.13 ....................................................... 12

Steve J. MacGillivray & Eric F. Gladbach, "*Implementing Preventative Measures: 401(k) Excessive Fee Litigation,*" IN HOUSE DEFENSE QUARTERLY, Fall, 2007 ...................................... 4

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, 27-78, March 2004 ......... 17

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, March 2004.................... 15

**Rules**

Fed.R.Civ.P. 23(h) .......................................................................................................................... 18

v

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

## I.    Introduction

   This case has gone on for more than four years. The Class battled a well-funded and well-represented adversary, which won numerous battles during the war. The issues were complex and the law was, and is, uncertain in numerous respects. Indeed, the historic settlement of *Kanawi v. Bechtel*, including $18,500,000 in monetary relief and over $27,800,000 in non-monetary affirmative relief, which combines for a total value to the Plans of over $46,300,000.  This recovery represents the culmination of over five years of research, investigation, evaluation, and litigation by Class Counsel, and at very significant risk. The cash component of the settlement alone, which is less than half of the settlement's value, qualifies this case, to Class Counsel's knowledge, as the second largest recovery ever in a case against a plan sponsor for excessive fees in its 401(k) plans. All current and future participants in the Plans will benefit from the valuable affirmative relief, which includes, among other relief: state of the art fee and expense disclosures to participants; prohibitions on the use of retail mutual funds and conflicts between the Plans and service providers; review and monitoring of plan services; and improved allocation of fee benefits to participants. Further, over 42,700 current and former participants, dating back to January, 1992, are eligible for monetary recovery, most of whom will not have to do anything to receive their award.

      In light of the risks and uncertainty in all ERISA litigation, and ERISA 401(k) fee litigation in particular, Class Counsel agreed to represent Beverly Kanawi and Salvador Aquino on a contingency basis for one-third of any recovery, plus costs. This is a typical arrangement in the market for professionals with the experience, competence and resources to handle litigation in more settled areas of law involving far less uncertainty and less risk than that of this case. Tellingly, at the time Plaintiffs retained Class Counsel, no other firm was willing to accept such a daunting challenge on this case at any rate, and virtually no cases had even been filed against large 401(k) plan sponsors involving claims of excessive fees and prohibited transactions under ERISA.  Recognizing the work of plaintiffs' counsel as exceptional in taking on such a 401(k) fee case, the Honorable Federal District Judge Patrick Murphy, in *Will v. General Dynamics*

1  *Corp.*, 2010 WL 4818174, at *2 (S.D.Ill. Nov. 22, 2010), approved fees of one-third of the

2  monetary recovery in a similar settlement and stated:

> Schlichter, Bogard & Denton's work throughout this litigation illustrates **an exceptional example of a private attorney general** risking large sums of money and investing many thousands of hours for the benefit of employees and retirees. No case had previously been brought by either the Department of Labor or private attorneys against large employers for excessive fees in a 401(k) plan. Class Counsel performed substantial work…, investigating the facts, examining documents, and consulting and paying experts to determine whether it was viable. This case has been pending since September 11, 2006. Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans.

9  *Id.* (emphasis added).

10  Additionally, the Honorable Federal District Judge Joe Billy McDade, in *Martin v.*

11  *Caterpillar*, Ct. Doc. 197, No. 07-cv-1009 (C.D.Ill. Sept. 10, 2010), also awarded attorneys' fees

12  of one-third of the monetary recovery in a similar settlement of a large 401(k) excessive fee case

13  involving Class Counsel, and stated:

> **The Quality of Class Counsel's Services was High.**
> Given the complexity and novel nature of this litigation and the settlement reached, which, … virtually stands alone in this type of litigation, it necessarily takes highly qualified attorneys performing at a high quality level to achieve the results obtained in this case.

17  The Settlement Agreement in this case provides for Plaintiffs' attorneys' fees to be paid

18  out of the common fund created by the settlement. Settlement Agreement ("S.A.") ¶ 7. In such

19  situations, counsel for the class may petition the court for an award of fees out of that fund.

20  *Middle Mountain Land & Produce Inc.*, 307 F.3d 1220, 1225 (9th Cir. 2002); *Mills v. Elec. Auto-*

21  *Lite Co.*, 396 U.S. 375, 391-92 (1970); *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980).

22  This case is unique in that Class Counsel have been virtually alone in their willingness to

23  fully pursue ERISA breach of fiduciary duty claims for the types of breaches at issue in this

24  litigation. No other law firm in the United States has pursued such cases to the extent Class

25  Counsel have. Decl. of Theado ¶ 14, Decl. of Sushelsky ¶¶ 13-14.  But for Class Counsel's

26  determined prosecution of this action, the Bechtel 401(k) Plans and their participants would not

27  have obtained any recovery, because it is extremely unlikely that they would have found other

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

1   adequate counsel to take on the burden and risk of these claims.

2       Class Counsel request $6.1 million in attorneys' fees.  Class Counsel's fee request

3   represents less than 14% of the lowest estimate of the value of the settlement and less than 5% of

4   the highest estimate according to Professor Stewart Brown. *See* Decl. of Brown, ¶ 9. This request

5   also does not compensate Class Counsel any sum for interest earned on the deposited settlement

6   amount or for the additional work to be done in the future, including: (1) three years of

7   monitoring Defendants' compliance with the settlement; (2) the risk, burden and expense of

8   contested arbitration over compliance issues; and (3) communicating with class members

9   regarding compliance for three years. It also does not compensate Class Counsel for the financial

10  risk taken by Class Counsel in agreeing to pay one-half of the expenses of the settlement if it is

11  not approved. Class Counsel's requested fee is dramatically less than the one-third fee that was

12  agreed to by the Named Plaintiffs in their contingency fee agreement with Class Counsel and

13  which is consistent with market rates in more established and less undesirable areas of the law.

14  Likewise, Class Counsel's fee request is dramatically less than the 25 percent baseline for class

15  litigation in the Ninth Circuit even though extraordinary circumstances justify a fee above that

16  benchmark and even though a simple lodestar calculation, without any multiplier at all, would

17  have justified a fee substantially larger than the one Class Counsel seek.

## II.   The Complex History of 401(k) Fee Litigation and Settlement of *Kanawi v. Bechtel*

20      On September 11, 2006, following a long period of extensive research and investigation

21  by Class Counsel, and further support from Ms. Kanawi and Mr. Aquino, Class Counsel filed

22  their original complaint alleging breaches of fiduciary duty and prohibited transactions against

23  Bechtel with respect to their obligations to their employees' 401(k) plans. According to an

24  ERISA defense firm report, this case and the others filed by Class Counsel created a new

25  category of actions, called "401(k) Fee Litigation"[1], and the Founding Partner of Schlichter,

26  Bogard & Denton, Jerome Schlichter, was named the Third Most Influential Person by *401(k)*

27
28  _____
    [1] *See, e.g.,* Groom Law Group, 401(K) FEE LITIGATION MAY 2009 UPDATE, *available a*t

1  *Wire*, a leading publication for the 401(k) industry. Prior to these cases, and continuing to the

2  present, no firm has devoted the resources or been willing to bring such actions in this relatively

3  undeveloped area of law. Theado Decl. ¶ 14; Sushelsky Decl. ¶17. Further, the Department of

4  Labor, to the knowledge of a long time ERISA practitioner, had never brought such a claim.

5  Theado Decl. ¶ 14 .

6       Class Counsel undertook their representation of the Named Plaintiffs and the Class fully

7  expecting to litigate each and every one of these cases against well-funded defendants and

8  capable defense counsel. Of the fifty largest law firms in the United States, at least six have

9  represented one or more of the defendants in Class Counsel's 401(k) fee litigation, including

10 Morgan, Lewis & Bockius LLP, lead counsel for Defendants in this case.[2] Against these

11 formidable adversaries, Class Counsel, in January, 2010, tried the first full trial of a 401(k) fee

12 case in *Tussey v. ABB*, No. 2:06-cv-04305, in the Western District of Missouri. These cases are

13 widely considered to have led to numerous large employers choosing to move their retirement

14 plans into cheaper institutional investments such as separate accounts. *See, e.g.*, Steve J.

15 MacGillivray & Eric F. Gladbach, "*Implementing Preventative Measures: 401(k) Excessive Fee*

16 *Litigation*," IN HOUSE DEFENSE QUARTERLY, Fall, 2007 at 10; "*Employers on the hook for 401(k)*

17 *Fees*," PHILADELPHIA BUSINESS JOURNAL, Sept. 3, 2010.

18      Throughout the litigation, Defendants disputed Plaintiffs' allegations of breaches of

19 fiduciary duty and prohibited transactions by contending, among other defenses, that: (1) the

20 level of recordkeeping fees is not imprudent under ERISA § 404(a); (2) investment management

21 fees paid were not excessive or unreasonable; (3) the payment of these fees did not constitute a

22 prohibited transaction; and (4) Plaintiffs' cause of action was barred by the statute of limitations.

23 Defendants argued that their arrangements were permissible and in the best interests of the Plans.

24      On May 15, 2007, the Court denied Defendants' motion to dismiss the Second Amended

25 Complaint. Plaintiffs were then successful in seeking certification of the Class, which was

26

27 http://www.groom.com/resources-367.html.

28 [2] These firms include: Morgan, Lewis & Bockius; O'Melveny & Myers; McDermott Will & Emery; Paul, Hastings, Janofsky & Walker; Bryan Cave; and Latham & Watkins.

1   granted on October 10, 2008.  Following extensive discovery and briefings, including over

2   500,000 pages of document production and over 35 depositions, Plaintiffs and the two Defendant

3   groups each filed motions for summary judgment.  This Court granted, almost entirely,

4   Defendants' motion for summary judgment on November 3, 2008. The parties subsequently

5   settled those claims that were not disposed of in summary judgment without Class Counsel

6   claiming any fee.  Plaintiffs then made the decision to invest substantially more resources into

7   this case by appealing the partial grant of summary judgment to the Ninth Circuit, which was

8   aided by amicus briefs filed on behalf of the AARP and the Department of Labor.

9          Following the completion of both parties' briefing to the Ninth Circuit, the parties entered

10  into mediation. Numerous discussions led to a September 27, 2010 mediation held in Chicago,

11  Illinois with national mediator Hunter Hughes.  This all-day mediation failed to reach a

12  settlement, but, after 11pm, was successful at narrowing the issues and arriving at a tentative

13  framework that any settlement would include a $18,500,000 common fund.  While the parties

14  had reached agreement on monetary relief to the Plans, non-monetary relief was not agreed upon.

15  Class Counsel insisted on broad affirmative relief as a condition of settlement. This was the

16  subject of continuing intense discussions, until the parties were able to reach agreement on the

17  substantive changes to Defendants' handling of the plans.  The settlement was agreed to on

18  October 6, 2010.  As was the case in the previous settlement in *Will v. General Dynamics*, "even

19  after reaching an agreement on monetary relief … Class Counsel continued to devote the time

20  and energy necessary to obtain substantial affirmative relief[.]"  2010 WL 4818174, at *3.

21         Following the signing of the Settlement Agreement, the parties filed a Joint Motion for

22  Preliminary Approval of the Settlement (Ct. Doc. 794). The Court thereafter issued its Order

23  granting preliminary approval of the settlement and finding the proposed Class notice sufficient

24  on October 29, 2010. (Ct. Doc. 800). After the Court's Order, Class Counsel learned that, as a

25  result of  Defendants' incomplete records of Plan Participants, an amendment to the Settlement

26  Agreement would be required.  The Court approved that Amendment, along with a modified

27  notice plan, on November 30, 2010. (Ct. Doc. 803). Pursuant to the Settlement Agreement and

28

SCHLICHTER
BOGARD & DENTON

the Court's Orders, individual notices were mailed to the Class on December 3, 2010.  Notices

were also published in *USA Today*, *San Francisco Chronicle*, *Houston Chronicle*, and

*Washington Post* on December 7, 2010. Class counsel also arranged for a Class website,

http://www.btcerisasettlement.com, to provide information and documents to the Class.

### III.     This is an Exceptional Situation, and Attorneys' Fees of 13.3% of the Lowest Estimated Value of the Settlement is Conservative

In granting attorneys' fees, the *General Dynamics* and *Caterpillar* courts recognized the

impressiveness and rarity of obtaining both significant monetary relief and substantive

affirmative changes to the plans, and that suits such as this have led to protections for 401(k)

participants far beyond the classes.  The courts awarded comparable fee awards which, in both

cases, represented less than 25% of the total value of the settlement including non-monetary

relief and, in both cases, one-third of the monetary relief:

> Based on the impressive monetary recovery and affirmative relief,
> including restrictions on asset-based fees for recordkeeping, prohibitions
> on the use of retail mutual funds, avoiding the provision of benefits to the
> fiduciaries from plan service providers, greater disclosure, and
> independent fiduciary oversight, Class Counsel's fee application is
> undoubtedly reasonable. The Court finds that the firm of Schlichter,
> Bogard & Denton have provided an enormous benefit to the class of
> General Dynamics employees and retirees, while undertaking great
> financial risk in the event of an adverse decision on the merits. Counsel's
> actions have led to dramatic changes in the 401(k) industry, including
> heightened disclosure and protection of employees' and retirees' retirement
> assets.

*Will v. General Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D.Ill. 2010).  The *Martin v.*

*Caterpillar* court stated:

> Even though Class Counsel is not requesting any fees based on the non-
> monetary recovery, which exceeds the monetary relief of $16.5 million by
> more than double, the requested fee of $5.5 million would appear more
> reasonable in comparison to a fee computed on the basis of the total
> monetary recovery[.]

Ct. Doc. 197, No. 070cv-1009 (C.D.Ill. Sept. 10, 2010).

Generally, courts within the Ninth Circuit use a 25% benchmark when awarding fees

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

based on a percentage of the fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Class Counsels' fee request, which constitutes less than 14% of the overall recovery to the Class, falls well under this guideline.

However, the Ninth Circuit has cautioned many times that rote granting of 25% is inappropriate, and that "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994). The Northern District of California itself has warned:

> [J]udicial acceptance of an invariable percentage contingency, like any other scheme of fixing prices, tends to redistribute income in a manner adverse to class members…. Cases not worth bringing for the benchmark would never be brought, even though some plaintiffs may have strong claims. This redistribution favors class defendants. For a court simply to fix a percentage contingent fee without seeking competitive alternatives is thus inconsistent with the court's fiduciary duty to the class.

*In re Oracle Sec. Litig.*, 131 F.R.D. 688, 696 (N.D.Cal. 1990).

Here, the unique circumstances of this case justify a higher, not lower, fee. In *Vizcaino*, the Ninth Circuit found relevant five factors to aid in determination of attorneys' fees: (1) the results achieved for the class; (2) the risk involved in the case for class counsel; (3) any affirmative relief or benefits beyond the cash settlement fund; (4) the market rate; and (5) the burden of the litigation on class counsel. *Vizcaino*, 290 F.3d at 1048-50. *See also Nobles v. MBNA Corp.*, 2009 WL 1854965, at *3 (N.D. Cal. 2009) (Breyer, J.) (citing the *Vizcaino* factors). Based on an analysis of these factors, it is clear that Class Counsels' request, which constitutes an attorneys' fee of less than 14% of the settlement value, is appropriate.

### A. Exceptional Results Achieved

The first factor courts look to in determining if the requested percentage fee is appropriate is the results obtained and quality of the legal services provided. Based on the results of a four-year battle with a well-funded Defendant represented by highly qualified attorneys, Class Counsel's performance had to be high quality in order to achieve the settlement – a settlement agreed to following a grant of summary judgment against Plaintiffs, and just days before oral

1   arguments before the Ninth Circuit. If the settlement is approved, its monetary value alone would

2   qualify it as the second largest settlement for excessive fees in a 401(k) plan in history. Every

3   Class member would be entitled to receive a monetary award, and most Class members, as

4   current participants, will receive their award directly through a tax-free 401(k) deposit.

5           Further, current and future Plan participants will enjoy the significant affirmative relief

6   provisions of this settlement for the foreseeable future. Class Counsel believes the quality of its

7   performance fully justifies the requested fee and costs award.

8           In this case, the Class went toe-to-toe with a financially powerful company and capable

9   law firms because Class Counsel was of sufficient size, had the expertise necessary, and had the

10  capacity and willingness to risk the expense of a lengthy battle and a potential cost award in favor

11  of Defendants. Class Counsel have risked over 21,000 hours in unreimbursed attorneys' time,

12  over 4,000 hours in unreimbursed legal assistant time, and in excess of 1.5 million dollars in out-

13  of-pocket costs because of the massive nature of this case; need for highly qualified experts in

14  finance, 401(k) plan recordkeeping, investment management and fiduciary practices; the time

15  necessary for attorneys to review hundreds of thousands of pages of documents, voluminous

16  summary judgment motions, and the need to see the cases through to trial and appeal.  Schlichter

17  Decl. ¶ 14.  Unless that risk is compensated with a commensurate award, no firm, no matter how

18  large or well financed, will have the incentive to even consider such a case as this.

19          Class Counsel in this case functioned as a private attorney general. Absent an award of

20  fees that adequately compensates class counsel, the purpose and function of class litigation under

21  Rule 23 of the Federal Rules of Civil Procedure will be undermined. *See* John J. Coffee,

22  Jr.,*Rescuing the Private Attorney General: Why the Model of the Lawyers as Bounty Hunter is*

23  *Not Working*, 42 MD. L. REV. 215, 216, 225-26 (1983) (the private attorney general provides an

24  important mechanism "to enforce the federal… laws, to challenge corporate self-dealing… and to

25  protect a host of other statutory policies," but in the absence of appropriate incentive structures,

26  "litigated judgments are few, cheap settlements are common, and …. the private watchdog can be

27  bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his

28

1   acceptance of an inadequate settlement").

2   　　　As described above, Class Counsel spent a year and a half before filing suit, investing

3   hundreds of hours of attorney time in intensely investigating, speaking with participants in the

4   Plans, obtaining documents from public sources and the Plan administrator, reviewing and

5   analyzing Plan documents and financial statements, developing expertise regarding industry

6   practices, conducting extensive legal research, and fashioning the Class's causes of action. It both

7   has committed to, and is capable of, devoting the resources necessary to vigorously

8   prosecute this litigation.

9   　　　Even after settlement, Class Counsel have committed to keeping the class informed,

10  including through the settlement website, http://www.btcerisasettlement.com, and through direct

11  calls with class members. In the weeks since notices were mailed to class members, Class

12  Counsel have fielded over fifty such calls and emails from class members. Schlichter Decl. ¶ 16.

13  Meanwhile, Class Counsel will continue to oversee and monitor compliance with the Settlement

14  Agreement for years with no expectation of, or request for, additional fees, and bear the risk of

15  paying half the cost of the settlement, including notice, if the settlement fails for any reason.

16  　　　As described in the Motion for Class Certification and the supporting documents,

17  Schlichter, Bogard & Denton has extensive experience litigating class actions of similar size,

18  scope, and complexity to this case. In addition to this case, Schlichter Bogard & Denton has been

19  named class counsel in other 401(k) Fee Cases, including *Will v. General Dynamics Corp.*, 2010

20  WL 4818174, at *3 (S.D.Ill. 2010); *Martin v. Caterpillar Inc.*, 2010 WL 3210448 (Aug. 12,

21  2010); *George v. Kraft Foods Global Inc.*, 251 F.R.D. 338, 351-52 (N.D. Ill. 2008); *Taylor v.

22  United Tech. Corp.*, 2008 WL 2333120, at *5-6 (D. Conn. June 3, 2008); *Tussey v. ABB Inc.*,

23  2007 WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007); *Loomis v. Exelon Corp.*, 2007 WL 2981951,

24  at *5 (N.D. Ill. June 26, 2007); *Spano v. Boeing*, 2008 WL 4449516 (S.D. Ill. 2008); and *Beesley

25  v. Int'l Paper, Co.*, 2008 WL 4450319 (S.D. Ill. 2008).

26  　　　Most recently, in *Martin v. Caterpillar, Inc.*, and *Will v. General Dynamics,* as stated

27  above, judges in the Central District and Southern District of Illinois certified similar settlement

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

classes of 401(k) Plan participants as part of their approval of the settlements and awards

amounting to one-third of the monetary recovery to Class Counsel.

These judges understood that the complexities and uncertainties of this litigation required

extraordinary efforts by Class Counsel, and noted that

> Class Counsel went toe-to-toe with one of the largest companies in the
> world, and its formidable counsel, because Class Counsel was of sufficient
> size, had the expertise, and had the finances to risk the expense of lengthy
> litigation involving hundreds of hours of uncompensated legal work and
> substantial out-of-pocket costs for experts and other litigation expenses.

*Martin v. Caterpillar Inc.*, 07-1009, Ct. Doc. 197, at 5.

In addition to awarding Class Counsel one-third of the monetary recovery of the

settlement, Judge McDade, in granting final approval of the settlement, observed that "Plaintiffs

have a hard row to hoe. This litigation entails complicated ERISA claims that are not only

dependent on the statute but also on various regulations that implement ERISA. These claims

also are relatively unique with limited case authority in support." *Martin*, 2010 WL 3210448 at

*2. As in *Martin*, the class settlement here "represents a significant boon to class members in

light of the complexity of this litigation, the potential for protracted litigation, and the strength of

the available defenses recognized[.]" *Id.*

In addition to being named the third most influential person in the 401(k) industry in

2007, firm principal Jerome J. Schlichter has been consistently commended for his capable

representation of both individual litigants and large classes. In *Mister v. Illinois Central Gulf

Railroad*, U.S. District Judge James Foreman commented of Mr. Schlichter: "this Court is

unaware of any comparable achievement of public good by a private lawyer in the face of such

obstacles and enormous demand of resources and finance." Order on Attorney's Fees, *Mister v.

Illinois Central Gulf Railroad*, No. 81-3006 (S.D. Ill. 1993). In *Wilfong v. Rent-A-Center*, Case

No. 00-680-DRH (S.D. Ill. 2002) Judge David Herndon found "that Mr. Schlichter's experience,

reputation and ability are of the highest caliber." Order on Attorney's Fees, *Wilfong v. Rent-A-

Center*, Case No. 00-680-DRH (S.D. Ill. 2002). Recently, Judge Michael David of the 22nd

Judicial Circuit in St. Louis, described Counsel's effort as "the stuff of legends" in connection

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

with the handling of a product liability verdict, upheld on appeal, which resulted in collection of a $40 million judgment for the family of a fallen fire fighter. *Martin v. Survivair Respirators, Inc.*, No. 22042-0883 (22d Cir. Mo.) (June 30, 2010) (Court Order and Judgment at p. 19) (attached hereto as Exhibit 1).

A fee of 14% of the lowest estimate of the value is reasonable and appropriate, given this case's unique risks, massive outlay of resources, untested theories of recovery, uncertainty of result, and capable representation by nationally recognized Class Counsel. Class Counsel fought back from losing summary judgment, and settled for a very substantial amount of monetary damages and affirmative relief.

### B.      Enormous Risk to Class Counsel

If a court chooses to award fees based on the lodestar method, it is an abuse of discretion to fail to apply a multiplier where the case was "fraught with risk and recovery was far from certain[.]"  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). Similarly, when applying the percentage of the fund method, courts should take into consideration the risk involved and award a higher percentage where class counsel accepts a great deal of risk in its prosecution of the claim.  *Vizcaino*, 290 F.3d at 1048-49.

Here, not only were the issues complex and the area of law uncertain, but the Court almost entirely found in favor of Defendants in its Order on their Motions for Summary Judgment. Counsel continued the fight, appealing to the Ninth Circuit, fully briefing the issues and responding to Defendants' arguments, and preparing for oral arguments. Class Counsel continued to carry the expense of litigation and be unreimbursed for any time for almost two years while the case was pending on appeal.

The enormous amount of risk faced by Class Counsel is in stark contrast with the situation in *Nobles*, 2009 WL 1854965, at *3. This Court therein stated during oral arguments regarding the petition for attorneys' fees that the case "struck me as a pretty much of a slam-dunk liability case."  Transcript of Proceedings at 8 (Ct. Doc. 202).  There, it was apparent early on that the parties would settle, and most of the attorneys' time was spent on settlement negotiations

1    instead of on prosecuting the claim.  That lack of substantial risk was one factor that led this

2    Court to award only 25% of the settlement fund.  *Nobles*, 2009 WL 1854965, at \*4.  In this case,

3    the severe risk faced by Class Counsel merits an award far in excess of the 14% award requested

4    by Class Counsel.

5        **C.      Extraordinary Affirmative Relief**

6            Where, as here, the settlement includes substantial affirmative relief, such relief must be

7    considered in evaluating the overall benefit to the Class.  "Incidental or non-monetary benefits

8    conferred by the litigation are a relevant circumstance."  *Vizcaino*, 290 F.3d at 1049.  In *Vizcaino*,

9    the Ninth Circuit found that the affirmative relief to the class and the benefit to employees

10   nationwide were the third factor  in determining the attorneys' fees.  Further, in *In re Pacific*

11   *Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995), the Ninth Circuit approved

12   the Central District of California's award of one-third attorneys' fees of a $12 million settlement

13   fund "because of the "complexity of the issues and the risks…[and] the nonmonetary benefits."

14   *See also* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71, at 337 (2004); PRINCIPLES OF THE

15   LAW OF AGGREGATE LITIGATION, § 3.13; *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)

16   (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange

17   efforts to seek effective injunctive or declaratory relief").

18
         **1.      The Substantial Affirmative Relief is Highly Valuable to the Class**
19
     The affirmative relief carries enormous value to the Plans.
20
         •       First, the Settlement Agreement provides that no member of the Bechtel
21
                 Trust & Thrift Plan Committee shall own in material part or serve as an
22
                 officer or director of any investment manager or service provider to the
23
                 Plan.
24
         •       Second, investment managers and service providers owned by Defendants,
25
                 its affiliates, shareholders, Committee members, or the investment
26
                 consultant, are prohibited from being retained for the Plan.
27
         •       Third, Defendants must engage a service provider to prepare the Annual
28

Disclosure.

• Fourth, the Plan may not offer any retail mutual fund as an investment option, and shall prohibit all of the Plan's separate account investment managers from investing in retail mutual funds.

• Fifth, the fees paid to the Plan's recordkeeper shall not be determined on a percentage of assets basis.

• Sixth, Bechtel will conduct an RFP competitive bidding process for recordkeeping services when the current contract expires. No fewer than four recordkeeping service providers will be invited to respond.

• Finally, Class Counsel will review compliance with the affirmative relief provisions of the Settlement Agreement.

## 2.   Estimated Value of Non-Monetary Relief

Such broad relief will provide powerful tangible financial benefits to Class members beyond the money they will receive. According to an expert on 401(k) plan investments and fees, the prohibition on retail mutual funds alone will save the Plan participants $4,526,446 per year in investment management fees when compared to the Fremont mutual funds that had populated the Plans during most of the class period.  Brown Decl. ¶ 7. The present value of their savings over five years is $27,839,668, and over fifteen years is $107,820,471. Brown Decl. ¶ 9.[3]

The separate account savings alone, when combined with the $18,500,000 cash up front, bring the total present-value benefit to the class of $46,339,618 over five years and $126,320,471 over fifteen years. Accordingly, the fee requested by Class Counsel represents a contingency fee of less than 14 percent of the present value of the benefit to the Class over five years and less than 5 percent of the present value of benefit to the Class over fifteen years.

In addition, there are other items of affirmative relief, including Bechtel's commitment to refrain from owning in material part or serve as an officer or director of any investment manager

---

[3] While the Settlement Period does not extend over 15 years, it is Class Counsel's opinion that the Settlement Agreement's benefits, including those regarding procedures for recordkeeping fees, will continue to be followed after the three year period due to the unlikelihood Defendants will reverse a course of action they have agreed to in

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORTIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

1  or service provider to the Plan and the requirement that the recordkeeping contract be

2  competitively bid. The financial value of these cannot be accurately estimated, but they have

3  significant additional value and ensure that Bechtel will not subsidize its corporate interests with

4  those of the 401(k) Plans.

5         Since the lawsuit and the Settlement Agreement have created a heightened awareness of

6  these issues, Class Counsel believe Defendants are highly unlikely to return to the practices that

7  led to this lawsuit being filed, and, accordingly, the estimated value of the affirmative relief

8  should be considered over time.

9         **D.**     **The Market Rate Demonstrates Class Counsel's Requested Award is Low.**

10             **1.**     **Class Counsel's Reasonable Expectation was that the Market for
               Attorneys' Fees in this Litigation is a Contingency Fee Based on a
11             One-Third Percentage of the Total Recovery to the Class.**

12        The Ninth Circuit further finds that class counsel's reasonable expectations, based on "the

13  circumstances of the case and the range of fee awards out of common funds of comparable size,"

14  to be the fourth factor in determining the fee award. *Vizcaino*, 290 F.3d at 1050. Here, Class

15  Counsel reasonably expected to receive a one-third fee out of any recovery, based on the case's

16  circumstances, market rates, and previous fee awards.

17        Class Counsel entered into agreements with each of the Named Plaintiffs for a

18  contingency fee of one-third of any recovery plus costs, with the understanding that their claims

19  would be brought as a class action. Exs. 2-3. Class Counsel have submitted affidavits and

20  declarations from other prominent counsel stating that they would have insisted upon a similar

21  arrangement and that contingency fees are universally the method of payment for comparable

22  legal services. *See* Theado Dec. ¶ 17. Class Counsel are virtually alone in their willingness to

23  handle 401(k) fee litigation, and do so only on a one-third contingency fee basis. Schlichter

24  Decl. ¶ 3.

25        The evidence is indisputable that an arm's length contract for representation between

26  competent counsel and the Class at the inception of this litigation would necessarily be on a one-

27

28  this litigation.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

1    third contingency basis. It follows that the market rate, and Class Counsel's reasonable

2    expectations, for the legal services provided by Class Counsel is a one-third contingency fee.

3              **2.      Class Counsel's Request is Consistent with the Market for its Services**

4              "Substantial empirical evidence indicates that a one-third fee is a common benchmark in

5    private contingency fee cases." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class*

6    *Action Settlements: An Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, March

7    2004, at 35. Many factors support the reasonableness of this request, including: (1) Class Counsel

8    seeks no additional fee for their five years of monitoring compliance with the Settlement

9    Agreement and are taking the risk of the settlement not being completed as well as the risk and

10   cost of arbitration in the event of noncompliance with the terms of the Settlement Agreement

11   [Schlichter Decl. ¶ 17]; (2) that the Named Plaintiffs agreed to a one-third contingency fee

12   [Schlichter Decl. ¶ 18]; (2) that Class Counsel are at the forefront of litigation of this type

13   [Sushelsky Decl. ¶17; Theado Decl. ¶14]; (3) that, unlike most areas of the law, virtually no

14   cases of this type had been brought by private firms before Plaintiffs' attorneys filed this case

15   [*Id.*]; (4) that this litigation entailed tremendous risks that no other plaintiffs' counsel was willing

16   to undertake at any contingency fee [Theado Decl. ¶14]; (5) that the regulatory agency involved,

17   the Department of Labor, has not brought such cases [Sushelsky Decl. ¶14; Theado Decl. ¶14];

18   (6) that this litigation required extensive and particularized skill, not only in litigating a complex

19   national class action, but also in navigating ERISA and the Department of Labor's voluminous

20   regulations, comments and advisory opinions relevant to the case [Theado Decl. ¶¶ 11-14]; (7)

21   that this litigation required extensive investment including the retention of expert witnesses, the

22   review of extensive discovery and the investment of tens of thousands of attorney hours, as well

23   as substantial legal assistant hours, in litigating the case; (8) that these expenses were incurred

24   over the course of more than five years, beginning well before the case was filed, during which

25   time Class Counsel has not received any compensation for its services to the class [Schlichter

26   Decl. ¶19]; (9) that numerous affirmative defenses, including the statute of limitations and

27   ERISA § 404(c) defenses, threatened to create a significant or complete bar to recovery and in

28

SCHLICHTER
BOGARD & DENTON

1   fact summary judgment was granted; (10) that Defendants adamantly deny liability and assert

2   that summary judgment was appropriate; (11) that the risk of substantial costs being assessed

3   against Plaintiffs was significant, and, in fact, an award of over $200,000 in Defendants' copying

4   costs against plaintiffs was upheld by the Seventh Circuit in *Hecker v. Deere*, 556 F.3d 575,

5   591 (7th Cir. 2009).

6          Moreover, Class Counsel will have substantial additional time in the case in the future for

7   no fee and has undertaken even further risk of substantial expense if a dispute arises. This time

8   and risk, all of which is without cost to the Class, includes: (1) the Settlement Agreement's

9   requirement that Class Counsel continue to monitor Defendants for three years without a fee; (2)

10  the risk of litigating enforcement of the settlement at Class Counsel's cost; (3) the Settlement

11  Agreement's requirement that Class Counsel take on the risk that the settlement would not be

12  finally approved, in which case Class Counsel is responsible for one-half of the settlement costs,

13  including the costs of notice to the Class; and (3) apart from the risk of further litigation and its

14  time and cost, the additional expenses Class Counsel will incur in the future, including expenses

15  related to maintaining a class website and responding to questions from Class members.[4]

16         In short, this case presents an overwhelming set of factors uniquely demonstrating the

17  appropriateness of the requested relief.

18         **3.     Information from Other Cases**

19         As explained above, the other 401(k) fee cases undertaken by Class Counsel concurrent

20  with *Kanawi v. Bechtel* also had one-third contingency fee agreements. Indeed, in Class

21  Counsel's only prior settlements of a 401(k) fee case, *Martin v. Caterpillar* and *Will v. General*

22  *Dynamics*, Class Counsel had one-third contracts and in both cases Class Counsel limited their

23  request to an amount equal to one-third of the monetary recovery to the Plans.  In both cases,

24  Class Counsel's request was granted.

25         In addition to the *Martin v. Caterpillar* and *Will v. General Dynamics* fee cases, an award

26  of 33 1/3% is consistent with fees granted by other courts. *See, e.g., In re Marsh ERISA Litig.*,

27

28  ───────────────
    [4] Also, Class Counsel do not seek a fee for the interest earned on the Settlement Fund since it was created.

1   No. 04-8157, 2010 WL 451028 (S.D.N.Y. Jan 29, 2010) (approving attorneys' fees of 33 1/3%

2   of a $35 million settlement); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 500 (D.D.C.

3   1981) (awarding attorneys' fees of 45% of settlement recovery); *Smith v. Dominion Bridge*

4   *Corp.*, No. 96-7580, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007) (in a securities class

5   action, noting that "a normal contingency fee in this type of case would be 30 percent to 40

6   percent of the recovery and that courts have awarded 33 1/3 percent in many cases with

7   settlement funds larger than $750,000," and approving one-third attorneys' fee award from the

8   common fund to class counsel); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 146-47 (E.D.

9   Pa. 2000) (awarding 33 1/3% of the $7.3 million common fund); *Perry v. Nat'l City Bank*, No.

10  05-CV-891- DRH-PMF (S.D. Ill. Mar. 3, 2008) (district court approved 33.3% of common fund

11  as attorneys' fee award); *In re Medtronic Inc. Implantable Defibrillator Prod. Liab. Litig.*, 2008

12  WL 4861694 (D. Minn. Oct. 20, 2008) (approving 38.33% award of attorney's fees from the

13  common fund).

14          Independent studies of class action litigation nationwide have come to a similar

15  conclusion that a one-third fee is consistent with market rates. *See* Theodore Eisenberg &

16  Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. OF

17  EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, 27-78, March 2004, at 35.

18          **E.      Class Counsel Expended an Enormous Amount of Resources**

19          During the four years of this litigation, Class Counsel expended over 21,000 attorney

20  hours, over 4,000 legal assistant hours, and $1,571,102.56 in costs. O'Gorman Decl. ¶ 1.

21  Prosecuting these claims has necessarily meant that Class Counsel has had to forgo significant

22  other work, including work that might have produced significant income during this time. The

23  Ninth Circuit has recognized that such burdens may merit an increase in the percentage of fees

24  awarded.  *Vizcaino*, 290 F.3d at 1050.

25  **IV.    A Lodestar Cross-Check Further Bolsters an Award of $6.1 Million**

26

27          Analysis of the requested amount of attorneys' fees and expenses under the lodestar

28

---

17

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

method confirms the reasonableness of a one-third award of attorneys' fees. In conducting a lodestar cross-check, a court first ascertains the lodestar figure by multiplying the number of hours worked by the normal hourly rate of counsel. Second, a court may adjust the lodestar by applying a multiple, taking into account the contingent nature of the representation, the risks of the litigation, the results obtained, the quality of the services rendered by counsel, awards in similar cases and the experience, reputation and ability of plaintiffs' counsel. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Class Counsel have spent 21,850.22 hours of attorney time and 4,075.54 hours of legal assistant time litigating this case, not including time spent on their fee petition. O'Gorman Decl. ¶ 2. Out of this total, 1,131.4 hours were spent by Senior Partners. *Id.* While Class Counsel are entirely a contingent fee firm and do not have set hourly rates, the courts in *Martin v. Caterpillar* and *Will v. General Dynamics* both recently found reasonable blended attorney rates for Class Counsel's attorney time of $514.60 per hour.  *Will*, Order Granting Plaintiffs' Attorney Fees, Ct. Doc. 259 at p. 6 (Nov. 22, 2010); *Martin*, Opinion and Order on Motion of Class Counsel for Fees, Expenses, and Award to Named Plaintiffs, Ct. Doc. 197 at p. 8 (Sept. 10, 2010). This is consistent with the market rate for comparable services in San Francisco.  Sturdevent Decl. ¶ 9. Applying the same blended attorney rate here, even without legal assistants and without any lodestar multiplier, a reasonable attorneys' fee would be $11,244,123.  Accordingly, Class Counsel's request for $6,100,000 represents far less – about half – of what a straight lodestar without a multiplier would produce.

## V.    Approval of Costs

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. Fed.R.Civ.P. 23(h). The expenses that may be reimbursed from the common fund encompass "all reasonable" litigation-related expenses. *See Trustees v. Greenough*, 105 U.S. 527, 533 (1882).  "The 'usual and customary' charges have been used as a measure of 'fair and reasonable' expenses for which the class ought to be

1    responsible." *In re THC Financial Corp. Litig.*, 86 F.R.D. 721, 740-41 (D.C.Hawaii 1980).

2        Litigating complex contingent cases such as this one requires counsel to incur significant

3    expenses. In litigating this case, Class Counsel received and reviewed over 500,000 pages of

4    documents, conducted or defended over 35 depositions, and retained six testifying experts to

5    render opinions on behalf of the class.  Schlichter Decl. ¶ 23. Class Counsel have advanced

6    $1,571,102.56 without including costs of this fee petition (Sherri O'Gorman Decl. ¶ 2)[5]. They are

7    entitled to reimbursement of those expenses. *See Mills v. Electric Auto-Lite*, 396 U.S. 375, 392

8    (1970) (a party who has produced a common fund for the benefit of a group may be reimbursed

9    for expenses of litigation); *In re Nucorp Energy, Inc.,* 764 F.2d 655, 661 (9th Cir. 1985) (costs

10   "are paid out of the fund itself because the attorney's efforts in creating or preserving the fund

11   have benefited others who, absent this form of compensation, would unfairly enjoy the benefit

12   without having shared the cost of acquiring the benefit"). Class Counsel, proceeding on a

13   contingent-fee basis with a high risk of no recovery, had a strong incentive to keep expenses

14   reasonable.

15       The costs are attributable to ordinary and necessary costs such as expert fees, computer-

16   assisted document organization, court reporter fees associated with depositions, travel and

17   mediation costs. *See Nobles*, 2009 WL 1854965, at *3 ("The Court finds that these expenses are

18   reasonable and the type typically billed by attorneys in the marketplace[.]" (citing *Harris v.*

19   *Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (stating that the plaintiff may recover "those out-

20   of-pocket expenses that would normally be charged to a fee paying client')). As Judge McDade

21   noted in granting final approval of the class settlement in *Martin v. Caterpillar,* cases such as

22   *Martin* and this case "involve significant discovery of complicated financial documents, [which]

23   require significant expert testimony" and the complex subject matter of the litigation "would be

24   difficult for a jury, if required, to comprehend, thus necessitating more expert testimony than

25   would otherwise be necessary." *Martin v. Caterpillar, Inc.*, 2010 WL 3210448, at *3 (C.D. Ill.

26   2010).

27   _____

28   [5] Apart from the declaration of Sheri O'Gorman regarding the amount and categories of expenses, Class Counsel is

19

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

1    Class Counsel have been reasonable and effective in their use of resources.  In

2    comparable litigation, even where full appeals are not required, costs frequently exceed $2

3    million.  *See Marcet, LLC v. Johnson & Johnson*, 2010 WL 680490, at *11 (S.D.Ill. 2010) (citing

4    2007 AIPLA Survey in determining that the average total cost where more than $25 million is at

5    risk in patent cases is $5.5 million.); *Velez v. Novaris Pharmaceuticals Corp.*, 2010 WL

6    4877852, at *4 (S.D.N.Y. 2010) (awarding the requested $2 million in litigation expenses);

7    *Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, 709 (D.Colo. 2007) (finding approximately

8    $2.18 million in expenses to be reasonable).

9    **VI.     Named Plaintiff Awards**

10

11    Named Plaintiffs Beverly Kanawi and Salvador Aquino have been active, hands-on

12    participants in this litigation, expending significant amounts of their own time to benefit the

13    Class. They came forward to initiate this action, took substantial risk, and thereafter remained in

14    contact with Class Counsel. They responded to document requests and interrogatories; reviewed

15    and approved pleadings; assisted with discovery and were involved in settlement. They prepared

16    for and were extensively questioned during two separate depositions each by Defendants'

17    counsel.

18    Further, as *Hecker* illustrates, the Named Plaintiffs risked a judgment against them for

19    Defendants' costs to obtain this historic recovery for the Class. In light of their faithful

20    commitment to the Class, Class Counsel request that each of the two Named Plaintiffs receive an

21    incentive award of $25,000 from the Settlement Fund. The total award for both named plaintiffs

22    represents just 0.27% of the total Settlement Fund. Awards of $25,000 for a named plaintiff

23    award and total named plaintiff awards of less than one-half of one percent of the fund are well

24    within the ranges that are typically awarded in comparable cases. *See, e.g., Van Vranken v.*

25    *Atlantic Richfield Co.,* 901 F.Sup.. 294, 300 (N.D.Cal. 1995) (awarding $50,000 incentive award

26    to class representative); *In re Conn. Gen. Life Ins. Co.*, 1997 WL 910387, at *14 (C.D.Cal. 1997)

27

28    prepared to submit an itemized list of expenses for in-camera review upon the Court's request.

SCHLICHTER
BOGARD & DENTON

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
ASE NO. C 06-05566 CRB/EDL

1  (approving $25,000 incentive payments); *Will v. General Dynamics Corp.,* 2010 WL 4818174, at

2  *4 (S.D.Ill. 2010) (awarding $25,000 to each of the three named plaintiffs).

3  **VII.    Conclusion**

4

5          For all the reasons stated herein, Class Counsel request that the Court approve a fee

6  award of $6,100,000 and a cost award of $1,571,102.56 to Class Counsel, Schlichter, Bogard &

7  Denton, and incentive awards of $25,000 to each of the two named plaintiffs out of the Gross

8  Settlement Fund.

9

10  Dated:  12/20/2010                                Respectfully submitted,

11                                                    SCHLICHTER, BOGARD & DENTON

12                                                      /s/ Jerome J. Schlichter
                                                      Jerome J. Schlichter - #0545143
                                                      Heather Lea (*Pro Hac Vice*)
13                                                    Mark G. Boyko (*Pro Hac Vice*)
                                                      100 South Fourth Street, Suite 900
14                                                    St. Louis, MO 63102
                                                      Telephone:  (314) 621-6115
15                                                    Facsimile:   (314) 621-7151

16                                                    FUTTERMAN & DUPREE LLP
                                                      JAMIE L. DUPREE (158105)
17                                                    160 Sansome Street, 17th Floor
                                                      San Francisco, CA 94104
18                                                    Telephone:  (415) 399-3840
                                                      Facsimile:  (415) 399-3838
19                                                    E-mail: jdupree@dfdlaw.com

20                                                    ATTORNEYS FOR PLAINTIFFS Beverly
                                                      Kanawi and Salvador Aquino, as
21                                                    representatives of a class of similarly situated
                                                      persons, and on behalf of the Plan

22

23

24

25

26

27

28