SCHLICHTER, BOGARD & DENTON
JEROME J. SCHLICHTER (054513)
HEATHER LEA *(Admitted Pro Hac Vice)*
MARK G. BOYKO *(Admitted Pro Hac Vice)*
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone:  (314) 621-6115
Facsimile:  (314) 621-7151
jschlichter@uselaws.com
hlea@uselaws.com
mboyko@uselaws.com

*Attorneys for Plaintiffs and Class Representatives*

FUTTERMAN & DUPREE LLP
JAMIE L. DUPREE (158105)
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone:  (415) 399-3840
Facsimile:  (415) 399-3838
jdupree@dfdlaw.com

*Local Counsel for Plaintiffs and Class Representatives*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| BEVERLY KANAWI and SALVADOR AQUINO, as representatives of a class of similarly situated person, and on behalf of the Plan,<br><br>*Plaintiffs*,<br><br>v.<br><br>BECHTEL CORPORATION, THE BECHTEL TRUST AND THRIFT PLAN COMMITTEE, PEGGI KNOX, and FREMONT INVESTMENT ADVISORS,<br><br>*Defendants*. | Case No. C 06-05566 CRB (EDL)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Charles R. Breyer<br><br>DATE: February 18, 2011<br>TIME:   10:00 a.m. |

Plaintiffs hereby submit this memorandum in support of the joint motion for final approval of the Class Action Settlement.

I.     INTRODUCTION

The Settlement Agreement, as amended, governs the resolution of this action. It will resolve class action litigation against Defendants Bechtel Corporation ("Bechtel"), the Bechtel Trust & Thrift Plan Committee ("BTC"), and Peggi Knox (collectively the "Bechtel Defendants"), and Fremont Investment Advisors, Inc. ("FIA"), alleging breaches of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.

As more fully described below, the Settlement provides significant benefits to the Settlement Class. The lawsuit, which was commenced on September 11, 2006, sought to obtain compensatory and affirmative relief based on Plaintiffs' allegations that Defendants engaged in prohibited transactions with the assets of Bechtel's 401(k) retirement plans (the Bechtel Trust and Thrift Plan and the Becon Trust and Thrift Plan (collectively, the "Plans") and breached their fiduciary duties owed to the Plan participants.

The relief provided in the Settlement will include substantial affirmative relief for three years after final approval. Such relief includes BTC's agreement, during the three-year period, (1) not to offer retail mutual funds in the Plans, something Plaintiffs alleged to be imprudent in this litigation; (2) not to use investment managers or other service providers owned by Bechtel, Bechtel affiliates or shareholders, or any member of the BTC; (3) to ensure that a disclosure is sent annually to each Plan participant stating the approximate investment management and administration fees charged to the participant's account for payments to Plan service providers; (4) to conduct an RFP for Plan record-keeping services and to ensure that the Plan's record-keeper is not paid for record-keeping services on a percent of assets basis; and (5) to conduct an expedited arbitration procedure to resolve any disputes. Class Counsel will review the Plan's

compliance with these procedures during the settlement period and the Bechtel Defendants will be required to make certain disclosures to Class Counsel during the settlement period in order to support Class Counsel's compliance review. The relief provided in the Settlement also includes an $18,500,000 gross settlement fund.

The monetary payment and affirmative relief obtained on behalf of Plan Participants and beneficiaries is substantial and will provide meaningful relief to each member of the Class and, for current participants, substantial benefits for years into the future.[1]

Before Plaintiffs filed this case on September 11, 2006, almost no cases had been filed by plan participants against fiduciaries in large employer 401(k) plans alleging prohibited transactions and breaches of fiduciary duties that allegedly resulted in excessive fees. Class Counsel believe this is one of the first cases achieving a settlement against fiduciaries of a large employer involving such claims and the largest recovery to a class based on such claims. Given the paucity of similar cases and the procedural posture of this action, the results obtained are very beneficial to the Class.

The Settlement was the product of arm's-length negotiation and mediation following years of contentious litigation and fact and expert discovery. The litigation resulted in this Court's November 3, 2008 Order on Summary Judgment, the appeal of which had been fully briefed and set for oral argument before the United States Court of Appeals for the Ninth Circuit. In light of the litigation risks that further prosecution of this action would inevitably entail, including the risk that this Court's Order on Summary Judgment would be affirmed on appeal, as

---

[1] The Settlement provides for four categories of cash benefits, or "Bands" based on the length of time Class members held assets in the Plans. Under the Plan of Allocation, the Bands are determined based on the length of time participants held balances in the plans, and each Band has approximately equal numbers of participants. Ten percent of the Net Settlement Amount is divided equally among Class members with the shortest tenure in the Plans, 50% of the Net Settlement Amount is distributed equally to the Class members with the longest tenure in the Plans, and the other two quartiles will be allocated 15% and 25% of the Net Settlement Amount, distributed on an equal basis within each quartile. The actual recovery per Class member will depend on the number of similarly tenured Class members. Those Class members who are current participants will have their monetary sum contributed directly in their tax-deferred retirement accounts.

more fully described below, the Settlement provides substantial benefits to the Class Members that would likely not have been achieved in the Litigation absent the Settlement. Accordingly, for the reasons set forth herein, the Settlement is fair, adequate and reasonable and the Court should grant final approval of the Settlement.

## II. THE CLAIMS IN THE CASE

The Plans are two 401(k) Plans comprising a Master Trust sponsored by Bechtel. Both of the Named Plaintiffs, Beverly Kanawi and Salvador Aquino, are participants in the Bechtel Trust and Thrift Plan and are members of the Settlement Class.

In the operative Third Amended Complaint, Plaintiffs alleged that Defendants were fiduciaries of the Plans, that they engaged in prohibited transactions, had conflicts of interest and selected imprudent investment options, and that Plan participants were damaged by Defendants' conduct. Plaintiffs claimed that the actions described above constituted breaches of Defendants' fiduciary obligations under ERISA § 404(a) [29 U.S.C. § 1104(a)] and § 406(b) [29 U.S.C. § 1106(b)].

Defendants denied and continue to deny Plaintiffs' allegations in their entirety and have vigorously defended these claims. Defendants contended that their conduct at all relevant times was proper, that they did not engage in prohibited transactions or breach any fiduciary duties owed to Plan participants, and that Plan participants were not damaged.

On September 11, 2006, Plaintiffs filed their original complaint in the Northern District of California. Dkt. 1. Plaintiffs filed a Third Amended Complaint on March 17, 2008, adding FIA as a Defendant. Plaintiffs filed a renewed Motion for Class Certification, which the Court granted over Defendants' objections on October 10, 2008. After contentious discovery, consisting of hundreds of thousands of documents, reports of eleven experts, and more than 20 depositions, the Parties each filed for Summary Judgment. On November 3, 2008, the Court

PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
4
CASE NO. C 06-05566 CRB/EDL

entered its Order on Summary Judgment. The Court granted judgment for Defendants and against Plaintiffs on all claims except a portion of one prohibited transaction claim covering a four-month period. On April 17, 2009, the Court approved the Parties' settlement of that claim and entered final judgment. On June 15, 2009, Plaintiffs timely filed their Notice of Appeal. After the appeal was fully briefed in the Ninth Circuit, the parties commenced settlement discussions. On September 28, 2010, the parties met for an all-day mediation in Chicago, Illinois, which lasted until after 11:00 pm. Negotiations between the parties continued by means of numerous telephonic conferences and email correspondence until, on October 6, 2010, the parties signed the Settlement Agreement.

The parties jointly moved for preliminary approval, which was granted by this Court on October 29, 2010. Dkt. 800. On November 19, 2010, the parties amended the Settlement Agreement to adjust the Plan of Allocation and notice plan, including, at the Parties' suggestion, an enhanced publication notice plan. On November 30, 2010, the Court approved the Amendment and found that the amended Notice Plan met the requirements of Rule 23(e). Dkt. 803.

### III.   THE TERMS OF THE PROPOSED SETTLEMENT

As described below, the proposed settlement includes significant benefits to the Class. (the "Settlement Benefits").

#### A.   Monetary Relief

Defendants will deposit $18,500,000 in an interest-bearing settlement account (the "Gross Settlement Amount" or "Settlement Fund"). An initial payment of $1,000,000 was made following preliminary approval of the Settlement. The remaining funds will be paid following final approval. The Gross Settlement Fund will be used to pay the participants' recoveries as well as any attorneys' fees and expenses awarded to Class Counsel, Settlement Administrative

Expenses, and Class Representatives' Compensation as described in the Settlement Agreement and the Plan of Allocation.

### B. Non-Monetary and Affirmative Relief

In addition to the monetary relief in the form of the $18,500,000 Gross Settlement Amount, the relief provided in the Settlement will include substantial affirmative relief for the entire three-year settlement period. As discussed above, such relief includes BTC's agreement, during the three-year period, (1) not to offer retail mutual funds in the Plans; (2) not to use investment managers or other service providers owned by Bechtel, Bechtel affiliates or shareholders, or any member of the BTC; (3) to ensure that a disclosure is sent annually to each Plan participant stating the approximate investment management and administration fees charged to the participant's account for payments to Plan service providers; (4) to conduct an RFP for Plan record-keeping services and to ensure that the Plan's record-keeper is not paid for record-keeping services on a percent of assets basis; and (5) to conduct an expedited arbitration procedure to resolve any disputes. Class Counsel will review the Plan's compliance with these procedures during the settlement period, and the Bechtel Defendants will be required to make certain disclosures to Class Counsel in order to support Class Counsel's compliance review.

These benefits represent a significant value to the Plans above and beyond the monetary settlement, and should help to provide reduced costs, increase net returns, and prevent conflicts of interest.

### C. Notice and Class Representatives' Compensation

The notice costs and all costs of administration of the Settlement will come out of the $18,500,000 Gross Settlement Amount. Incentive payments to the two Named Class Representatives in amounts to be approved by the Court will also be paid out of the Gross Settlement Amount. Plaintiffs have sought $25,000 for each of the two Class Representatives,

an amount well in line with precedent recognizing the value of individuals stepping forward to represent classes, particularly in novel cases like this one. In such cases, the benefit of a potential recovery that can be obtained by any individual does not outweigh the cost of prosecuting his or her claims and there is significant risk, including the risk of no recovery and the risk of uncompensated time and energy.

### D. Attorneys' Fees and Costs

Class Counsel has filed a separate Motion for Award of Attorneys' Fees and Expenses. Class Counsel seeks fees to be paid out of the Gross Settlement Amount, in an amount of $6.1 million, as well as reimbursement for costs incurred of $1,571,102.56. Class Counsel has not sought fees on the interest earned on the Gross Settlement Amount. Class Counsel will also seek no further fees or costs for the three years of review for compliance, for document review, or for communications with Class Members or Defendants during the Settlement Period. Further, Class Counsel will not seek fees or costs if arbitration under the Settlement Agreement is necessary.

### E. Summary

The proposed Settlement balances the risks, costs, and uncertainties of continuing litigation with the certainty of a substantial, meaningful recovery for the Settlement Class as well as significant affirmative non-monetary relief which will benefit the Class in the future. The Settlement is the result of serious and complex negotiations including an all-day mediation with Hunter Hughes, Esquire, a nationally recognized mediator who is extensively experienced in mediating major class action cases. Class Counsel believes the proposed settlement is fair, adequate, and reasonable and in the best interests of the Class, and that the named Plaintiffs are adequate class representatives. The relief that would be provided by the Settlement is adequate and reasonably within – if not beyond – what the Class might have obtained through extended

litigation and trial, particularly when providing for the expense, uncertainty and delay of continuing litigation.

## IV. ARGUMENT

The Settlement Agreement satisfies all applicable criteria for approval, including the well-established factors frequently cited by the Ninth Circuit and by District Courts in this Circuit. The Settlement Agreement should be approved as fair, reasonable, and adequate in all respects.

### A. The Applicable Legal Standards

A strong judicial policy favors settlements, particularly where complex class action litigation is concerned. *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *Gardner v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 1687832, *13 (N.D.Cal. April 22, 2010)*; see also Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). The proposed Settlement here is the result of lengthy, contentious and complex arm's-length negotiations between the parties. Counsel on all sides are experienced and thoroughly familiar with the factual and legal issues presented. Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *Id*. *See also, Rodriguez v. West Publishing Corp*., 563 F.3d 948, 967 (9th Cir. 2009) ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]"). Class Counsel is very experienced in class action litigation generally and, in particular, in class litigation arising from alleged breaches of fiduciary duties to retirement plans under ERISA, and it is Class Counsel's opinion that the proposed Settlement is fair and reasonable.

"The court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Id*. Further, the "proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*.

Meanwhile, the Court must be mindful that "[v]oluntary conciliation and settlement are the preferred means of dispute resolution" and that this preference "is especially true in complex class action litigation." *Id.*

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; and (9) the presence of a governmental participant. *Linney v. Cellular Alaska Pshp.,* 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. The strength of the Plaintiffs' case on the merits.

As discussed above, this Court granted Summary Judgment in Defendants' favor on nearly all claims in this case, based in part on this Court's determination that the alleged conduct was barred by the applicable six-year statute of limitations.

Class Counsel continue to believe in the merits of Plaintiffs' claims. However, there are significant legal obstacles and defenses which render recovery in this case uncertain, and, if there were to be a recovery, would affect the amount. Defendants deny all of Plaintiffs' allegations, deny that they committed or participated in any fiduciary breaches or other wrongdoing, have vigorously contested Plaintiffs' allegations, and would have continued to do so if the case had gone forward. This Court agreed with Defendants in dismissing nearly all of Plaintiffs' claims based on Defendants' Motion for Summary Judgment. Courts have dismissed cases alleging similar claims for additional reasons which Defendants asserted and would have continued to assert in this case, including the applicability of the "safe harbor" contained in ERISA Section 404(c). *See, e.g., Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009) ("*Hecker I*"), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009) ("*Hecker II*"), *cert. denied,* 78 USLW 3239 (U.S. Jan 19, 2010); *Taylor v. UTC*, 354 Fed.Appx. 525 (2d Cir. 2009).

The statute of limitations remains a significant issue. Under ERISA, the statute of limitations is six years. 29 U.S.C. § 1113. This Court determined that the statute of limitations barred the vast majority of Plaintiffs' claims.

### 2. The complexity, length and expense of continued litigation.

The instant lawsuit is, as an ERISA case, quite complex in multiple respects. First, it is one of the first cases in the country alleging breaches of fiduciary duty and prohibited transactions against a large employer and 401(k) Plan fiduciaries. Thus, the case presents novel legal issues. Second, the case required Class Counsel to identify and prepare no fewer than six highly experienced consulting and testifying expert witnesses with extensive reports, as well as to devote tremendous attorney resources of both time and expenses to bring the case to summary judgment and a subsequent Ninth Circuit appeal. Recovery of any kind, apart from the amount of any recovery, was not certain as discussed above. Moreover, in *Hecker v. Deere*, though

limited to its specific facts and pleadings, not only was there no recovery allowed but the named plaintiffs therein were assessed over $200,000 in costs. *Hecker I*, 556 F.3d at 591.

### 3. The absence of collusion.

The Settlement with Defendants followed years of adversarial litigation which was defended with very substantial resources. The Settlement was the result of intense negotiations, including an all-day, 14-hour, in-person mediation in Chicago, Illinois with an experienced national mediator, Hunter Hughes, and with Defendants and multiple insurance representatives present. Since the mediation, the Parties have engaged in many protracted telephone conferences and exchanged email correspondence in attempts to resolve differences on settlement terms. Settlement discussions with all parties were fully informed as a result of the extensive factual discovery, as well as by means of briefing and memoranda prepared by the parties on all contested legal issues, not only in dispositive motion briefing, but also before the Court of Appeals. The negotiations were vigorous and both sides argued their respective positions strenuously. The resulting Settlement was undeniably the product of arm's-length bargaining.

### 4. The opinion of competent counsel as to the reasonableness of the settlement.

As described more fully below, Class Counsel are experienced and competent. Class Counsel believe the settlement to be fair and reasonable in light of the procedural and substantive risks Plaintiffs would face if litigation were to continue. Dkt. 795-2, para. 2. The parties also submitted the settlement terms to an independent fiduciary, Evercore Trust Company, with extensive experience in service as an independent fiduciary to employee benefit plans in connection with class action lawsuits. Ex. 1. After a thorough review, Evercore determined, among other things, that "the terms of the Settlement, including the $18.5 million cash Settlement Amount combined with the programmatic relief provided for in the Settlement, the Settlement release, the plan of allocation, and Plaintiffs' Motion for Attorneys' Fees, are

1  reasonable, in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and
2  the value of claims foregone." Ex. 1, p. 3. Evercore further concluded that the Plan should not
3  object to the Settlement. *Id*. Evercore's letter outlining its review and conclusions is attached as
4  Exhibit 1.

**5.     The stage of the proceedings and the amount of discovery completed.**

Plaintiffs conducted very substantial discovery. Defendants produced hundreds of thousands of pages of documents. Each document was electronically indexed and sorted, and thereafter individually examined, analyzed and cataloged by an attorney. Class Counsel also reviewed and analyzed additional and voluminous documents provided by the Class Representatives and other documents obtained from public filings with the United States Department of Labor. Class Counsel additionally engaged experts intimately familiar with financial services industry practices, retirement industry practices, and fiduciary practices, who examined and analyzed these and other documents and provided opinions based on the record and their experience. All of Plaintiffs' experts were deposed at length. Defendants also had five testifying expert witnesses, each of whom was also in turn deposed. In addition, Class Counsel conducted over a dozen depositions of various current and former employees of Bechtel, FIA and the Plans' investment consultant. Thus, the case was extensively developed.

**6.     The degree of opposition from class members.**

Only nine individuals – or 0.021% of the Settlement Class – objected to the Settlement. The objections made by these individuals were thoroughly addressed in Plaintiffs' Response to Objectors, filed concurrently with this Memorandum, and that Response is incorporated herein. None of the objections that have been submitted to this Court warrant a rejection or modification of the settlement.

## V. THE NOTICE WAS ADEQUATE

Due process and Rule 23(e) require that Class Members receive notice of the pending settlement which meets the test of "reasonableness." *Wal-Mart Stores Inc. v. Visa Usa Inc*., 396 F.3d 96, 113 (2d Cir. 2005). The notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Id*. at 114 (internal quotations and citations omitted); *see also, Rodriguez v. West Publishing Corp*., 563 F.3d 948, 962 (9th Cir. 2009) ("Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably," and a notice satisfies the Rule 23 requirements if "it describes the aggregate amount of the settlement fund and the plan for allocation").

"Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Id*. at 175.

Here, as this Court previously determined (Doc. 803), the proposed form and method of notice of the Settlement agreed to by the parties satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(e)(1). The Notice fully apprised Settlement Class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including (i) the terms and operation of the Settlement; (ii) the nature and extent of the release, (iii) the maximum counsel fees that will be sought; (iv) the procedure and timing for objecting to the Settlement; and (v) the date and place of the fairness hearing.

The Notice Plan consisted of multiple components designed to reach Settlement Class

Members.  First, the Individual Notice was sent by first-class mail to the address of current Plan Participants and the last known address of former Plan Participants shortly after entry of the Preliminary Approval Order.  The addresses of most Settlement Class Members are maintained by the Plans' personnel, who use this information for, *inter alia*, mailing Plan notices, participant communications, and other Plan-related information.  Other addresses were found using social security number searches.  Participants include both current and former employees and agents of Bechtel and its affiliates, including Becon Construction.  In addition to the Individual Notice, Class Counsel developed a dedicated website, www.btcERISAsettlement.com, solely for the settlement, and a link to that website appears on Class Counsel's website, www.uselaws.com.  The Notice Plan also included a requirement for follow-up by the Settlement Administrator for those class members whose notice letters were returned because they no longer resided at such address.  Publication Notice also ran in *USA Today, Washington Post, San Francisco Chronicle and Houston Chronicle*. As detailed in the attached Declaration of Rust Consulting, Inc. Regarding Timely Compliance of Class Notice, each of these notice requirements has been met.  Rust Decl. ¶¶ 2-12.

Thus, the notice provided with respect to the Settlement fully satisfied the requirements of due process and Rule 23.

## VI.     CONCLUSION

Plaintiffs respectfully request that the Court finally approve the proposed Class Action Settlement as fair, reasonable, and adequate, and enter the proposed Final Order and Judgment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

By:   /s/ Jerome J. Schlichter
   Jerome J. Schlichter
   Mark G. Boyko
   Heather Lea
   100 S. Fourth St., Suite 900
   St. Louis, Missouri 63102
   (314) 621-6115; (314) 621-7151 (Fax)


ATTORNEYS FOR PLAINTIFFS/
CLASS REPRESENTATIVES
Beverly Kanawi and Salvador Aquino